MORSE & GROSSMAN, INC., Respondent, *v.* ACKER & CO., INC., Appellant.

BROKAB CORP., Respondent, *v.* ACKER & CO., INC., Appellant, and FIDELITY WAREHOUSE Co., Undertenant.

Argued March 3, 1948; decided April 22, 1948.

*Aaron Frank, Francis V. Hurley* and *Nathan L. Samuelson* for appellant. I. Tenant, having leased six physically connected buildings as one unit, is entitled to the same protection under the Commercial Rent Law as the tenant of a single building covering six lots. (U. S. Const., 14th Amendt.; N. Y. Const., art. I, §§ 6, 11; *Roberg* v. *Phipps Estate,* 156 F. 2d 958; *Belvedere Hotel Co.* v. *Williams,* 137 Md. 665; *Shaft* v. *Carey,* 107 Wis. 273; *Little Carnegie Realty Corp.* v. *Delmonico Movienews Theatre,* 273 App. Div. 45; *Barrow Realty Corp.* v. *Village Brewery Restaurant, Inc.,* 272 App. Div. 262; *True-Value Slipper & Sandal Corp.* v. *Quaker Mechanical Corp.,* 189 Misc. 328; *Dvorkin* v. *Tudor Properties Co.,* 71 N. Y. S. 2d 307; *People ex rel. Beaman* v. *Feitner,* 168 N. Y. 360; *People* v. *Santoro,* 229 N. Y. 277; *Reed* v. *Bell & Co.,* 188 Misc. 914; *Culver* v. *Title Guar. & Trust Co.,* 296 N. Y. 74; *Walker* v. *18 Street Holding Corp.,* 267 App. Div. 141; *H. R. H. Mfg. Co.,* v. *Dennis,* 188 Misc. 446.) II. The tenant's commercial space is the minimum area as to which the landlord must comply with the requirements of 25% equity and 50% investment under subdivision (d) of section 8. (*Matter of Singer* [*State Laundry Co.*], 189 Misc. 150; *Randall* v. *Bailey,* 288 N. Y. 280; *Gasoff Realty Corp.* v. *Serval Food Exch.,* 71 N. Y. S. 2d 58; *Little Carnegie Realty Corp.* v. *Delmonico Movienews Theatre,* 273 App. Div. 45; *Lewittes & Sons* v. *Spielmann,* 73 N. Y. S. 2d 552; *Culver* v. *Title Guar. & Trust Co.,* 296 N. Y. 74; *Reed* v. *Bell & Co.,* 188 Misc. 914.) III. There is no provision for a partial dispossess either in the Civil Practice Act or the Commercial Rent Law. (*Kauffman & Sons Saddlery Co.* v. *Miller,* 72 N. Y. S. 2d 911; *Lewittes & Sons* v. *Spielmann,* 73 N. Y. S. 2d 552; *Joanette Juniors, Inc.,* v. *Princeway Realty Corp.,* 272 App. Div. 420; *Matter of Metro Export Packers, Inc.,* 272 App. Div. 943.) IV. The effect of the lower court's ruling is to bestow upon respondent, a grantee, a power greater than that possessed by his grantor, the landlord of

the entire unit; such a power cannot be recognized without thwarting the statutory objective.

*George Brussel, Jr.,* and *David G. Haskins* for Morse & Grossman, Inc., respondent. I. The landlord has properly qualified under the exception set forth in subdivision (d). It is " a person " who acquired " title to the building or other rental area " within the meaning of the statute. (*McSweeney* v. *Bazinet,* 269 App. Div. 213; *Matter of Evers* v. *Dimino,* 186 Misc. 136; *People ex rel. Leonard* v. *Hamilton,* 27 Misc. 308; *Noyes* v. *Children's Aid Soc.,* 70 N. Y. 481; *Matter of Mortgage Corp.* v. *Menan Realty Corp.,* 258 App. Div. 429; *Matter of Cowles* v. *Board of Regents,* 266 App. Div. 629; *Matter of Hardecker* v. *Board of Education,* 180 Misc. 1008; *Caddy* v. *Interborough Rapid Tr. Co.,* 195 N. Y. 415; *Bailey* v. *School Dist. No. 5,* 204 App. Div. 125; *Mecca Realty Co.* v. *Kellogg Toasted Corn Flakes Co.,* 85 Misc. 598, 166 App. Div. 74.) II. Respondent did not seek or obtain a final order dispossessing the appellant from part of its space. The question of partial dispossess has no application. (*J. C. A. Trading Corp.* v. *Musels,* 71 N. Y. S. 2d 183; *Bernzweig* v. *Beck Realty Corp.,* 189 Misc. 918.) III. The emergency rent of the buildings not affected by this proceeding can be fixed under subdivision (e) of section 2. (*Cronson* v. *Fink,* 184 Misc. 723.)

*Ruben M. Cohen* for Brokab Corp., respondent. I. The building involved in this proceeding is included within the Commercial Rent Law. (*Trade Accessories* v. *Bellet,* 184 Misc. 962; *Tompkins* v. *Hunter,* 149 N. Y. 117; *Kesbec, Inc.,* v. *City of New York,* 67 N. Y. S. 2d 900; *Peerless Sugar Co.* v. *35 Steuben St. Realty Corp.,* 66 N. Y. S. 2d 839; *Dunham* v. *Townshend,* 118 N. Y. 281; *Matter of City of New York [Newport Ave.],* 218 N. Y. 274; *Goetz* v. *Duffy,* 171 App. Div. 680.) II. The landlord proved compliance with the requirements of the Commercial Rent Law. III. The Commercial Rent Law, although broad in its scope, should receive a reasonable construction by the courts. (*Sissias* v. *Perlmutter,* 184 Misc. 174; *Rosen* v. *370 West 35 Street Corp.,* 184 Misc. 172.)

FULD, J. These appeals, presenting another aspect of the emergency rent legislation which affects property in the city of

New York, require construction and application of section 8 of the Commercial Rent Law (L. 1945, ch. 3, as amd.). The respondent in each case is a landlord; in one case, he is the owner of the building 162 Maiden Lane, in the other, of 35 De Peyster Street. Each brought a proceeding pursuant to subdivision (d) of section 8 of the Rent Law to recover possession of his respective building from the appellant who occupies both of these buildings as tenant.

For upwards of eighty years, appellant has leased and occupied six contiguous and physically integrated buildings which include the two here involved. Covering an entire block front, the buildings, through the years have been, and still are, devoted exclusively to housing a single unitary business enterprise — appellant's bonded warehouse. All six buildings are customarily served by a common entrance located in the building at 73–74 South Street, wherein is also situated the warehouse office. The unitary and interdependent character of the premises is further emphasized by the circumstances that three of the locations — including 35 De Peyster Street and 162 Maiden Lane — have no other or separate means of entrance whatever and that 162 Maiden Lane has no stairway, elevator or electric hoist, the only way up or down being through the adjoining building, 73–74 South Street, which connects with 162 Maiden Lane at various floor levels.

Appellant and its former landlord, the predecessor in title of both respondents, always treated and dealt with the six buildings as a single integrated structure. Indeed, this concept of singleness, evident throughout, is all-pervasive. The parties considered the several buildings as " the premises ", and, in the last written lease between them, the landlord reserved a single rental for the entire leasehold — $8,000 a year plus 50% of the " net profit earned by the operation of the premises ". No effort was made, no intent evidenced on either side, to apportion the fixed flat rent of $8,000 a year among the component parts; and, just as significant, the variable percentage rent was measured by the profits derived from operation of the entire property as a unitary enterprise with no attempt at apportionment or allocation. And when, in April, 1945, following passage of the emergency rent legislation, the landlord gave notice — pursuant to section 3 of the Commercial Rent Law — of the emergency rent to be

paid, he specified a single undivided and indivisible rental for the entire premises. In addition, the lessor's privilege of cancellation was, under the lease, applicable to the entire leasehold, and to the entirety alone, and was conditioned upon circumstances affecting the whole of the space rented. After the written lease expired on December 31, 1945, appellant remained in possession of the premises on a month to month basis "under the exact same terms and conditions * * * contained in [his] written lease ".

Approximately a year later, the former landlord, in a series of apparently unconnected transactions, sold five of the individual buildings, each to a separate and different vendee. Two of these purchasers, the respondents herein, have instituted the present summary proceedings to recover possession of their respective properties.

It is against the background of these facts that we are called upon to determine whether subdivision (d) of section 8 of the Commercial Rent Law, which makes no provision whatever for partial dispossession, nevertheless permits the piecemeal eviction of a tenant from various portions of his space simply because the several components of the demised premises were separately disposed of to different persons.

By its introductory sentence, section 8 flatly prohibits the eviction or removal of a tenant from his leasehold as long as he pays his rent, except in specific enumerated instances. Insofar as here material, the statute recites that " So long as the tenant continues to pay the rent " authorized by law and notwithstanding the expiration of his lease, " no tenant shall be removed from any commercial space, by action or proceeding to evict or to recover possession, by exclusion from possession, or otherwise * * * unless: * * * (d) The landlord owned or acquired an enforceable right to buy or take possession of the building or other rental area on or before January twenty-fourth, nineteen hundred forty-five and seeks in good faith to recover possession of the commercial space for his immediate and personal use; or possession is sought by a person who acquires title to the building or other rental area subsequent to January twenty-fourth, nineteen hundred forty-five, and who likewise seeks in good faith to recover possession of the commercial space for his immediate and personal use; provided, however, that * * *

such landlord or such person shall have an equity in the property of not less than twenty-five per centum of the purchase price ''. (Emphasis supplied.) (L. 1945, ch. 3, as amd. by L. 1946, ch. 272.)

The basic purpose of the emergency rent legislation was to protect tenants by placing a ceiling on rents and by preventing widespread evictions while the emergency created by the wartime shortage of space continued. (Commercial Rent Law, § 1; see, also, *Matter of Fifth Madison Corp.* [*N. Y. Tel. Co.*], 297 N. Y. 155; *Twentieth Century Associates, Inc.,* v. *Waldman,* 294 N. Y. 571.) Accordingly, consonant with settled canons of construction, the statutory language must be interpreted to effectuate that purpose.

The value of commercial space to a tenant lies largely in its particular extent and configuration; the use to which he puts the premises may not admit of gerrymandering or even diminution. Eviction of a tenant from a part of the demised space may well render the remainder so uneconomical and so impractical that he may ultimately have no choice but to surrender the entire area. In other words, partial eviction might well compel complete removal — a result patently at odds with the Legislature's purpose to assure the tenant continued possession. Viewed in this light, it is obvious that the words '' commercial space '', as used in section 8, relate to and denote the entire premises rented and occupied by the tenant. It is those premises which of necessity constitute the minimum unit against which an eviction proceeding may be brought. This interpretation is buttressed by the fact that, while subdivision (a) of the same section 8 — as well as other provisions of the statute (§ 2, subds. [h], [i], [j]) — makes express reference to '' any part of the commercial space '', no similar phrase is used in subdivision (d). This deliberate omission from section 8(d) of such a qualifying phrase reveals a clear legislative purpose that there shall be no dispossession of a tenant from less than his entire premises, and it is undisputed that the original lessor, as long as he remained the landlord, could not have instituted a proceeding to accomplish the partial eviction of the tenant. Consequently,

grantees from that lessor, standing in no better position, acquire no greater right or power to evict or remove the tenant, piece-meal, from a portion of his rented space.

Looking still at the language of the statute, we are per-suaded that section 8 (d) permits the landlord to dispossess the tenant from his " space " only if the landlord owns — or has a right to buy — " the building or other rental area ". Reference to other provisions of the statute (e.g., § 1, § 2, subds. [e], [h]; § 4) demonstrates that the landlord's prop-erty — " building or other rental area " — must include within itself all of the premises — " commercial space " — rented and occupied by the tenant. For instance, in subdivision (e) of sec-tion 2, it is in part provided that, if the commercial space was not used on the freeze date for commercial purposes, the emer-gency rent was to be the reasonable rent then charged " for the most nearly comparable commercial space *in* the same build-ing or other rental area ", and in section 4, the term " entire property " is described as " including land and building or other rental area *in which* such commercial space is located ". (Emphasis supplied.) Unless the Legislature's discriminating selection of language is to be entirely disregarded, we must assign some significance to the repeated juxtaposition of the two phrases — " the commercial space " and " the building or other rental area " — and the apparent distinction between them in the mind of the Legislature. As indicated, considering the particu-lar manner in which the latter phrase is employed throughout the statute and considering also the relative positions of landlord and tenant, it can reasonably and logically be interpreted only as the whole which contains the part — the landlord's property which contains the tenant's space. Stated differently, the phrase, " the building or other rental area " must refer to the physical unit of property held by the landlord — be it building, complex of integrated buildings, or building plus open land — which includes and embraces within itself the entire premises rented by the tenant.

The circumstance that each of the respondents purchased and owns a building, or that each seeks possession of all of the property bought by him, cannot change the fact that he failed to acquire " the building or other rental area " containing the tenant's space. Nor can that circumstance vary the consequences

visited upon the tenant sought to be evicted, for he would still be left with only a portion, perhaps an unusable portion, of the premises which he was occupying. To permit the landlord to remove the tenant from less than the area rented, the lease agreement would have to be rewritten by reducing the amount of space demised and by adjusting the rent thereafter to be paid for the space remaining. The statute confers no such power.

In brief, then, the tenant may not be removed from less than the entire space which he rented and, in order for the landlord to qualify and proceed under section 8, subdivision (d), he must hold a unit of property larger than, or coextensive with, the tenant's premises. Since the space here occupied by the tenant is the unit leased, the entire integrated group of six buildings, he may not be dispossessed by any one having title to less than the whole of that unit.

If partial and piecemeal dispossession were to be sanctioned, circumvention of the emergency rent legislation would be facilitated, its evasion encouraged. By simply disposing of a part of the tenant's rented space — be it a floor of an entire building or one of a group of buildings — the lessor would render the tenant subject to removal and ouster from that portion of the space. Such a result both the letter and the spirit of the Commercial Rent Law condemn.

In each case, the order of the Appellate Division should be reversed, and the petition dismissed, with costs in all courts.

LOUGHRAN, Ch. J., LEWIS, CONWAY, DESMOND, THACHER and DYE, JJ., concur.

Orders reversed, etc.