TRIBORO PARKING, INC., Landlord, *v.* WALTER H. BLOMEIER, Tenant.

Municipal Court of the City of New York, Borough of Manhattan, January 30, 1953.

*Maurice Flam* for landlord.

*Harold J. Blackman* for tenant.

STARKE, J. In this holdover summary proceeding the landlord seeks the eviction of the tenant from only the ground floor (the business portion) of an entire building occupied by the tenant, and predicates this proceeding entirely upon subdivision (g) of section 8 of the Business Rent Law (L. 1945, ch. 314, as amd.).

It is conceded that the tenant was a statutory tenant under an expired lease prior to signing a lease on April 24, 1950 (par. 26 describes the tenant as a statutory tenant); that the lease provided for one rental for the entire building which consists of a drug store on the ground floor and two upper floors used by the tenant and his family as dwelling space; that the lease was for two years, from April 1, 1950, to March 31, 1952, and has now expired.

The landlord maintains (par. 15 of the petition) that, insofar as the business portion is concerned, the tenant has lost the protection of the emergency rent laws. The landlord bases this proceeding on paragraph 26 in the lease and presents the sole argument that when the tenant signed the lease he also signed an agreement to vacate at the expiration of the lease; that the tenant signed this lease at a time when he was a statutory tenant under an expired lease, and that the proceeding therefore comes within the purview of the first portion of subdivision (g), which provides: " The tenant, being in possession under an expired lease or tenancy, or as a monthly or statutory tenant, agrees in writing to terminate his occupancy on a date certain in the future ".

The tenant questions the effectiveness of the lease, contending, among other things, that the lease is based upon an invalid Supreme Court order; that the landlord has never taken steps to validate said Supreme Court order but instead has attempted in effect to modify or amend the order by applying to the Temporary State Housing Rent Commission instead of to the Supreme Court; that even if the lease is effective, subdivision (g) is not retroactive and is not binding upon a statutory tenant who executed a lease, containing an agreement to vacate, prior to March 31, 1951 (the date the statute was amended by adding the words " statutory tenant "); that the provisions of the first portion of subdivision (g) are inapplicable, in that upon the execution of the lease on April 24, 1950, a new tenancy was immediately created and that the tenant became a tenant under an unexpired lease at the time the agreement to vacate became effective; that, therefore, the second portion of subdivision (g) is applicable, and that the landlord fails to come within the requirements thereof since the agreement to vacate was not executed three months after the commencement of the term but was in the lease itself and became effective simultaneously therewith.

The landlord herein is the lessee of the premises under a twenty-one-year lease which commenced on October 1, 1949. Prior thereto, and for many years, the tenant and his family have been in occupancy of the entire building, under an agreement whereby one rental was paid for the entire building, comprising both business property and dwelling space. After the present landlord became the lessee of the premises, and tenant's immediate landlord, the tenant continued to pay rent under the same arrangement.

As the result of a proceeding brought by the landlord in the Supreme Court, in which the court definitely was not apprised of the fact that the premises involved comprised both business and residential space, an order was signed on April 21, 1950, fixing an *increased* rent of $187.50 per month for the entire building. Of course, it is elemental that the Supreme Court had no jurisdiction to either fix or increase a rental upon the entire premises, which included two floors of residential space, concededly occupied only for dwelling space by the tenant's family. There is grave doubt as to whether such an order has any validity. If the lease is void from its inception, the entire lease including the clause containing the agreement to vacate falls, and the tenant still remains a statutory tenant today.

In any event, based upon the said Supreme Court order, the landlord and tenant herein executed on April 24, 1950, a written Gilsey form lease, wherein the landlord leased to the tenant "the entire building and premises" at a rental of $2,250 per annum. This rental was in excess of any rent theretofore paid by the tenant. The lease provided that the premises were to be used and occupied by the tenant "for the purpose presently used by him." Nowhere in the lease is there any indication as to what portion of the rent is to be allocated to business space or dwelling space.

The said lease provides in paragraph two thereof, that at the end or other expiration of the term the tenant shall deliver up the demised premises in good order or condition. Paragraph 26 of the said lease contained the following typewritten provision: "The tenant herein agrees to vacate the premises *at the termination date* herein stated; that he is now in possession of the premises; that there is no lease outstanding and in effect as of the date of this agreement; that he is a *statutory tenant* and that this agreement is made in consideration of the execution of this lease."

After the expiration date of the lease on March 31, 1952, the landlord commenced a summary proceeding to evict the tenant from the entire premises by virtue of subdivision (g). The landlord subsequently discontinued this proceeding upon the tenant interposing a defense, among others, that the premises constituted both dwelling and business space.

Thereafter, on July 23, 1952, the landlord filed a registration statement with the Temporary State Housing Rent Commission fixing the rent for the dwelling space at $60 per month. No steps have ever been taken in the Supreme Court to properly fix the rent for the business space, nor to reform, modify or amend the prior Supreme Court order.

The landlord, when it commenced the proceedings in the Supreme Court to fix the rental upon the entire building, must have done so upon the theory that the building constituted business space in its entirety. Upon that basis the landlord obtained an increased rent upon the entire premises. The landlord, under authority of that order, entered into an alleged lease at the increased rent for a period of two years, and received the benefit of the increased rental during that period. Is not the landlord estopped at this late date from bringing a proceeding to evict the tenant from that portion of the premises which it now admits is the only business space in

the entire premises, when the whole theory of its application to the Supreme Court and the fixation of the rental of $187.50 per month in the lease of April 24, 1950, was that the entire building constituted business property? An examination of the type of lease, which is a business form, and of the purpose clause is interesting upon this subject. It would not be amiss at this time to point out that if the entire building were business space, the landlord would not be permitted to evict from only a portion of the premises in any event. (*Morse & Grossman v. Acker & Co.*, 297 N. Y. 304; *Kaufman & Sons Saddlery Co. v. Miller*, 298 N. Y. 38.) Nor could the landlord bring successfully a proceeding to evict the tenant from the entire building on the ground that the tenant had agreed to vacate on a date certain, since the undisputed facts would indicate that part of the premises is actually dwelling space and hence, as to that space, no waiver of tenant's rights would be effective.

The landlord relies on *Lask* v. *Spitzer* (102 N. Y. S. 2d 857) and *City Bank Farmers Trust Co.* v. *Rival Shoe Co.* (198 Misc. 1002, affd. 279 App. Div. 1059). However, these cases are not exactly in point as they relate to agreements to vacate executed at the time the tenants were in possession under unexpired leases. The leases were in full force and effect at the time that either the extension of an existing lease or a new lease was signed. Inasmuch as more than three months had elapsed since the commencement of the term, the courts sustained the leases with their acceleration clauses as being in conformance with the second portion of subdivision (g). In the *Lask* v. *Spitzer* case (*supra*) the new lease was executed on the last day of the old lease. In the *City Bank* v. *Rival Shoe* case (*supra*) the tenant was also a tenant under an unexpired lease. At any rate, it appears that the Court of Appeals held to the contrary in the case of *Steinberg* v. *Forest Hills Golf Range* (199 Misc. 128, mod. 278 App. Div. 856, mod. 303 N. Y. 577).

There is a case exactly on all fours with the case at bar on the question of a statutory tenant's executing a lease containing an agreement to vacate. That case is *Romos Corp.* v. *World Toy Mfg. Corp.* (N. Y. L. J., Jan. 18, 1952, p. 244, col. 1), wherein the Appellate Term, First Department, unanimously affirmed a final order in favor of the tenant dismissing the landlord's petition on the merits. The court held that the provisions of subdivision (g) could not be applied retroactively to a statutory tenant who executed a lease containing an agreement to vacate prior to March 31, 1951, when the subdivision was amended to

add the phrase " or tenancy or as a monthly or statutory tenant." (L. 1951, ch. 430.) So that, a clause in a lease to the effect that the tenant will vacate at the expiration of the term was held to be not binding on a statutory tenant who executed such a lease prior to March 31, 1951.

In the case at bar, the landlord is relying entirely upon the agreement to vacate clause (par. 26) in the lease as being the only agreement to vacate signed by the tenant. Since the lease was executed on April 24, 1950, when the tenant was a statutory tenant, and at which time the amendment adding the words " statutory tenant " was not yet effective, the petition herein must necessarily be dismissed on the authority of the *Romos* case (*supra*).

Assuming that the lease is a valid one, this court agrees with the view of the tenant that the second portion of subdivision (g) and not the first is applicable. At the time the tenant signed the lease on April 24, 1950, for an increased rental, a new tenancy was immediately created. Both the lease and paragraph 26 containing the agreement to vacate became operative simultaneously, the agreement to vacate being part and parcel of the lease itself. Therefore, at the time the agreement to vacate became effective, the tenant was in possession under an unexpired lease. Since the second portion of subdivision (g) requires that the agreement to vacate be signed at least three months subsequent to the commencement of the unexpired lease, there was no compliance by the landlord with the requirements of the statute.

It is true that subdivision (g) does not prescribe the form of the agreement to vacate, and that a lease is a form of agreement. However, a careful reading of the subdivision (g) will clearly indicate that the Legislature intended to exclude a lease from being considered a form of agreement to vacate. There is no doubt that the Legislature added the second portion for the specific and unmistakable purpose of giving a tenant a waiting period of ninety days after signing a lease in order to think it over before signing a separate agreement to vacate. If we adopt the construction of subdivision (g) that a lease was the form of agreement to vacate which the Legislature contemplated, it would mean that every statutory tenant executing a lease after March 31, 1951, which contained a quit and surrender clause would be signing an agreement to vacate as soon as he signed a new lease. He would thus be executing his death warrant insofar as protection under the emergency rent laws is concerned.

The prime purpose of a new lease is to create a new tenancy. The limitations and restrictions in the lease are subordinate to the hiring of the premises. The printed quit and surrender clause in paragraph 2 of the lease is not an agreement to vacate within the meaning of subdivision (g); neither is paragraph 26 of the lease which binds the tenant to do no more than what he is required to do in paragraph 2, namely: to vacate at the expiration date of the lease.

The Legislature did not intend that the agreement to vacate be in the form of a lease, but contemplated an independent agreement. The statute provides for a waiting period of three months after the execution of the lease before the tenant shall sign an agreement to vacate. Undoubtedly, it was the legislative intent to avoid duress and to insure the fact that the agreement to vacate represented a voluntary act performed after thought and with due deliberation on the tenant's part.

For the foregoing reasons, final order is hereby granted in favor of the tenant, dismissing the landlord's petition on the merits.