MARGARITE LORIEO, Landlord, *v.* KATIE WALKER, Tenant.

Municipal Court of the City of New York, Borough of Brooklyn, April 12, 1954.

*Walter Lubarsky* for landlord.

*Samuel Graff* for tenant.

ALTER, J. On May 20, 1953, tenant moved into the living space, possession of which landlord seeks the recovery in this summary proceeding. Tenant agreed to pay and did pay $85 per month therefor until January, 1954. She counterclaims for overcharges, treble damages, a counsel fee and other relief.

Although the premises in which the subject living space was, were vacant when landlord took title on May 15, 1953, it is undenied and the testimony shows that at the time of the letting and at all times thereafter landlord treated the premises as housing accommodations consisting of some seven units, a *de facto* multiple dwelling albeit illegally occupied as such. The evidence shows and I find that the maximum emergency rent established for the space occupied by the tenant is $40.25. There is no evidence to show that the premises were occupied as anything other than a multiple dwelling, the use to which they are now put, on or before April 1, 1953.

Landlord has offered in evidence and relies upon a certificate of occupancy issued by the department of housing and buildings of the City of New York on January 12, 1942, authorizing the

use of the premises as a " two family — Not a Multiple Dwelling. Note: It will be illegal to occupy premises by more than two families." Landlord insists this certificate establishes that the living space herein sought was decontrolled by the amendment to the State Residential Rent Law (L. 1946, ch. 274, as amd.) which decontrolled " housing accommodations in one or two family houses which are or become vacant on or after April first, nineteen hundred fifty-three " (L. 1953, ch. 321, § 3, subd. [i]). This certificate is evidence only of the permissible legal use of the premises, not what the actual use was or is. The premises did not remain a two-family house after the conversion into a multiple dwelling, whenever that was. (*Matter of Levy* v. *McGoldrick*, 279 App. Div. 940.) Were such a certificate binding I should be compelled to find, with logical consistency, that the premises are now, at this very time, being occupied as a two-family house in the face of its obvious occupancy by more than two families, thereby by compulsion of the certificate issued in 1942, consecrating as true the palpably false. I hold that the landlord has not met the burden placed upon her to show that the rent charged and received is not in excess of the rent permitted by law for the living space. I therefore find that the landlord has been receiving rent in excess of the permitted $40.25 per month, the summary proceeding is dismissed on the merits and the tenant is entitled to judgment on her counterclaim.

Assuming, *arguendo,* that the certificate of occupancy had in fact probative value and I were obliged to close my eyes to the obvious facts, I would have to find that on May 15, 1953, when the property was vacant, the premises were a two-family house. Nevertheless, when the Legislature decontrolled " housing accommodations in one or two family houses " vacant on or after the effective date, it seems to me the Legislature intended to say exactly what it did say. Housing accommodations *in* one and two-family houses which were or became vacant on or after April 1, 1953, became decontrolled, not housing accommodations, as here, in an actual multiple dwelling.

Landlord would apply a much stricter interpretation to the Legislature's language, taking the position, if I understand the argument correctly, that the Legislature's thought was to free the premises from control merely by vacancy when the landlord was possessed of a certificate of occupancy for a two-family house issued sometime in the remote past regardless of its actual illegal occupancy on or after the effective date. The Legisla-

ture's language clearly indicates that it was speaking of a static condition, of actual two-family houses, legally occupied as such and which were to continue to be so occupied. I find it impossible to read into the words employed an intention to decontrol once-upon-a-time two-family houses which were *de facto* multiple dwellings or became such subsequent to the effective date. I find it hard to impute an intention to the Legislature to discriminate against legitimate, law-abiding landlords who own and operate bona fide multiple dwellings and to make such a discrimination in favor of those who, in utter disregard of law, have chosen to rent legal two-family houses as multiple dwellings, retaining controls on the former while freeing the latter. I find it impossible to believe in its decontrol of one and two-family houses, the Legislature aimed at inducing owners by the reward of the tremendous financial returns here apparent, to utilize their properties in a way so completely contrary to the stated purposes of the State Residential Rent Law (L. 1946, ch. 274 as amd.), "to prevent speculative, unwarranted and abnormal increases in rents; * * * to prevent exactions of unjust, unreasonable and oppressive rents and rental agreements and to forestall profiteering, speculation and other disruptive practices tending to produce threats to the public health". And I find that the words used, although possibly capable of the landlord's strained interpretation when viewed *in vacuo,* do not permit such interpretations when seen as part of the entire legislative scheme, its stated purposes, its history and the conditions sought to be alleviated. As it has been said (*Morse & Grossman* v. *Acker & Co.,* 297 N. Y. 304, 310): "The basic purpose of the emergency rent legislation was to protect tenants by placing a ceiling on rents and by preventing widespread evictions * * * Accordingly, consonant with settled canons of construction, the statutory language must be interpreted to effectuate that purpose." Landlord's proposed interpretation would completely nullify the act's purpose. I would not follow it. The Legislature intended to, and the statute did, decontrol real, not fictional, two-family houses.

My interpretation of the amendment is also in accord with the interpretation of the State Rent Administrator whose opinion No. 103 reaches the conclusion that premises such as these are not decontrolled. "His interpretation is entitled to great weight". (*Lightbody* v. *Russell,* 293 N. Y. 492, 496.)

I accordingly find that the landlord has unlawfully exacted from the tenant an amount greater than the maximum rent in

the sum of $44.75, which is the difference between the $85 that the landlord demanded and the tenant paid, and the sum of $40.25, the maximum rent as adjusted. The tenant having paid the excess of $44.75 for a period of eight months, she is entitled to the sum of $358 as an overcharge. I will not allow treble damages because I do not find the overcharge was willful. I will allow a counsel fee of $75. I will allow the tenant the sum of $44.75 in security, which is the difference between the sum of $85 deposited as security and the sum of $40.25 which is permitted by law. Upon the tenant's vacating the premises, she will be allowed to recover from the landlord the security of $40.25 as heretofore mentioned.

Recapitulating the foregoing figures, we find that the tenant is entitled to the sums of $358 plus $75 plus $44.75 making a total of $477.75. The landlord is entitled to the fixed rent of $40.25 for the month beginning January 20, 1954, and deducting that sum from $477.75 we have a balance due of $437.50 due to the tenant for which amount I award judgment against the landlord.