GAULANG REALTY Co. INC., Landlord, *v.* LOUIS DYER, Doing Business as SOUTHERN GLASS WORKS, Tenant, and " JOHN DOE " et al., Undertenants.

Municipal Court of the City of New York, Borough of The Bronx, June 10, 1954.

*Leo E. Falkin* for landlord.

*Jules Whitehorn* and *Joseph Delman* for tenant and under-tenants.

TRIMARCO, J. This is a holdover summary proceeding brought to evict the tenant, Louis Dyer, and his undertenants from business and/or commercial premises located at 299 Bruckner Boulevard, Bronx, New York.

Prior to March 28, 1952, the tenant, Louis Dyer, was in possession and occupancy of a store at the said address, used by him as a glassworks, as a *statutory tenant*. This is conceded by the tenant.

Prior to March 28, 1952, a shop directly in the rear of said store was vacant, the same having been occupied prior thereto by a tenant, Starlight Paint Company.

On March 28, 1952, the landlord's predecessor in title, Willman Holding Corp., entered into a lease in writing with the tenant, Louis Dyer, wherein and whereby it leased to said tenant the store (then concededly occupied by him as a *statutory tenant*) and the shop directly in the rear of the store (then vacant), for a term of two years, beginning April 1, 1952, and ending March 31, 1954.

That by the said lease the tenant, Louis Dyer, among other things, agreed in writing therein as follows: " 26. *Upon the expiration or other termination of the term of this lease, Tenant shall quit and surrender to Landlord, the demised premises, broom clean, in good order and condition, ordinary wear and damage by the elements excepted.* If the last day of the term of this lease or any renewal thereof fall on Sunday this lease shall expire on the business day immediately preceding. Tenant shall remove all property of Tenant as directed by Landlord and failing so to do Landlord may cause all of the said property to be removed at the expense of Tenant and Tenant hereby agrees to pay all costs and expenses thereby incurred. Tenant's obligation to observe or perform this covenant shall survive the expiration or other termination of the term of this lease."

On April 1, 1952, the tenant, Louis Dyer, entered into possession of the premises leased to him under the said agreement of lease, and has occupied the same continuously to date.

On February 17, 1954, the landlord notified the tenant that his lease was expiring on March 31, 1954, and that the landlord did not intend to renew such lease and that the tenant should take immediate steps to relocate his business, and that if the tenant remained in possession of the premises after March 31, 1954, he would do so strictly as a monthly tenant subject to the landlord's right to terminate his tenancy on thirty days' notice.

On March 26, 1954, there was personally served on the tenant a written notice terminating his tenancy as of April 30, 1954, and demanding that the tenant vacate from the premises at that time.

The tenant, and his undertenants, have held over and still continue in possession of the premises despite the said notice terminating the tenant's tenancy.

The landlord contends in effect that it is not prohibited by the emergency rent laws from evicting the tenant from the

demised premises, and that a final order should be awarded to the landlord removing the tenant and undertenants therefrom.

The tenant maintains in substance that paragraph 26 of the lease was never meant to be, nor is it an " agreement to terminate " under subdivision (g) of section 8 of the emergency rent laws. (Business Rent Law [L. 1945, ch. 314, as amd.]; Commercial Rent Law [L. 1945, ch. 3, as amd.].)

Two issues are presented by this summary proceeding: (1) Is the agreement of lease which the tenant signed on March 28, 1952, while in possession of the store premises as a statutory tenant, a valid agreement to vacate the premises on a date certain in the future, and is the landlord entitled to possession of both the store premises and the shop premises under the provisions of subdivision (g) of section 8 of the emergency rent laws, because of tenant's agreement to vacate on March 31, 1954, as set forth in said agreement of lease? (2) Whether, in any event, the landlord is entitled to evict the tenant and subtenants from the shop premises because of the fact that no statutory controls exist as to such premises?

As to the second issue the tenant maintains that the landlord may not obtain possession of a portion of the premises leased to the tenant, arguing that such an eviction would constitute a piecemeal eviction, citing the cases of *Kauffman & Sons Saddlery Co.* v. *Miller* (298 N. Y. 38) and *Morse & Grossman* v. *Acker & Co.* (297 N. Y. 304). The tenant further argues that if such a partial eviction is permitted, there would be no way to determine the amount of rent to be paid for the remainder of the premises, and that since the landlord leased to the tenant the whole of the premises it should not now be permitted to regain possession of a portion thereof.

In the case of *Morse & Grossman* v. *Acker & Co.* (*supra*), the tenant occupied an entire building as a statutory tenant, and the landlord attempted to secure only a portion of the controlled premises for its own use under subdivision (d) of section 8 of the act. The court held, construing said subdivision, that the landlord must require *all* of the controlled premises in order to take advantage of subdivision (d), and that the landlord was not privileged to evict a statutory tenant from only a portion of controlled premises for its own use. The case of *Kauffman & Sons Saddlery Co.* v. *Miller* (*supra*) reiterated the same rule in a case where the landlord had evicted the tenant from all of the controlled premises and then proceeded to use only a part for his own use.

Effective March 31, 1950, both emergency rent laws were amended to provide as follows (Business Rent Law, § 12, as amd.; Commercial Rent Law, § 13, as amd.): " The provisions of this act also shall be inapplicable with respect to any commercial (business) space now vacant or hereafter vacated by a tenant, or to space demised under a lease or sublease executed subsequent to March thirty-first, nineteen hundred fifty to a person not in possession at the time of the execution thereof."

The court holds that the rule of the cases cited above has no application in the instant case. The shop premises were never under the control of the emergency rent laws so far as the tenant and subtenants in this proceeding are concerned. They went into possession of such premises in April, 1952, having never occupied them before, and under the emergency acts the said shop premises were specifically decontrolled as to them (Business Rent Law, § 12; Commercial Rent Law, § 13).

The tenant further argues that no eviction should be permitted from the shop premises because there would be no way of determining the rent to be paid for the remainder of the premises. This does not follow. The shop premises had a fixed emergency rent under the emergency rent laws prior to the making of the lease in March, 1952, and the rent for such premises would revert to the emergency rent. In any event the rent laws themselves prescribe a method for determining emergency rent where none is automatically available.

The testimony adduced on the trial of the issues herein was to the effect that the shop premises are entirely disconnected from the store premises and that the said shop premises are not used and occupied by the tenant himself, but are used and occupied by certain subtenants of the tenant Dyer. The landlord is therefore entitled to a final order with respect to these premises.

Now, reverting to the first issue raised herein, the tenant maintains that paragraph " 26 " of the lease (the quit and surrender clause) (*supra*), may not be construed as an " *agreement to vacate* " under subdivision (g) of section 8 of the emergency rent laws; that paragraph 26 of the lease was never meant to be nor is it an " *agreement to terminate* " under subdivision (g) of section 8 of the law. Tenant maintains that said provision of said lease, is the same as, or so similar to, as to be indistinguishable from the clauses in any lease for business or commercial space; that it was never intended by either of the parties when the lease was executed that the tenant

thereby agreed to vacate and waive the protection of the Business Rent Law. Tenant further argues that such an agreement fraught with such serious consequences must clearly and unambiguously indicate that it was executed pursuant to subdivision (g) of section 8 of the law; and that no such language can be found in paragraph 26 (*supra*), which is a regular printed clause of a standard form of lease in wide use.

Both rent laws now provide as follows (§ 8): " So long as the tenant continues to pay the rent to which the landlord is entitled  *  *  *  no tenant shall be removed from any commercial (business) space  *  *  *  unless:  *  *  *  (g) The tenant, being in possession under an expired lease or tenancy or as a monthly or statutory tenant, agrees in writing, or notifies the landlord in writing of his intention, to terminate his occupancy of the premises on a date certain in the future, or a tenant in possession under a lease not yet expired agrees in writing, by agreement executed not less than three months after the commencement of the term thereof, to terminate his occupancy at any time before or after expiration of the term of such lease.''

Subdivision (g) of section 8 was first added by chapters 314 and 315 of the Laws of 1945 and amended in 1949 (L. 1949, chs. 534, 535). At that time its language was not as broad as it is now. The first clause applied only to a tenant *under an expired lease or tenancy* who agreed in writing to vacate on a date certain in the future.

In 1951 (L. 1951, chs. 430, 431), however, the subdivision was amended so as to make the first clause applicable not only to a tenant under an expired lease, but also to a " *monthly or statutory tenant* " who agreed in writing to vacate on a date certain in the future.

The landlord contends that subdivision (g) is directly applicable to the tenant's occupancy of the store premises in this case. This court is in agreement therewith.

On March 28, 1952 (which was a considerable time after the effective date of said subdivision [g] as amd.), the tenant, Louis Dyer, being then a *statutory tenant* of the store premises, entered into an agreement of lease in writing by which agreement he covenanted and agreed to quit and surrender the premises to the landlord on the termination date of the lease, namely, March 31, 1954.

The court finds and holds that this was an agreement in writing on the part of the tenant to terminate his occupancy of the premises on a date certain in the future, and the fact

that the agreement is in the form of a lease is immaterial. (See *City Bank Farmers Trust Co.* v. *Rival Shoe Co.,* 198 Misc. 1002, affd. 279 App. Div. 1059.)

In the said case, at page 1005, Mr. Justice HECHT said: " In the court's opinion, the provisions of subdivision (g) of section 8 of the statute, for the reasons indicated, apply to the 1946 agreement between the defendant and plaintiff's grantor. *This conclusion is not affected by the fact that the 1946 agreement was itself a lease* to take effect June 1, 1946, and to supersede the existing 1945 lease after that date. *Subdivision (g) of section 8 does not limit the agreement therein provided for to those which are not leases.*" (Italics ours.)

Subdivision (g) does no more than withdraw the protection of the emergency rent laws from certain types of situations where the Legislature believed that the rights of the parties ought to be governed by their contracts. Presumably, the law-makers were of the opinion that an agreement in writing, voluntarily entered into by a tenant in possession as a statutory tenant to vacate the premises at a date certain in the future, was not an agreement entered into under the duress of the emergency.

In the case of *Romos Corp.* v. *World Toy Mfg. Corp.* (207 Misc. 851), the Appellate Term considered the problem here involved. In that case a final order in favor of the tenant was unanimously affirmed by the court on the ground that the 1951 amendments to subdivision (g) (which broadened the statute to cover a " monthly or statutory tenant ") could not be applied retroactively to cover an agreement to vacate which was made and expired prior to the effective date of the amendment.

The majority of the court affirmed the final order without opinion, but Mr. Justice EDER wrote a concurring opinion, which bears directly on the issue involved in the instant case. The import thereof is that if the tenant therein had entered into a lease *after the effective date of the amendments* (March 31, 1951), and had agreed under said lease to quit and surrender the premises at the expiration thereof, the provisions of the statute would have been fully applicable and the landlord would have been entitled to remove the tenant from possession of the premises.

That is the situation which exists herein. In March, 1952, a year after the effective date of the amendments, the tenant, Louis Dyer (then a statutory tenant of the store premises), entered into an agreement of lease in writing to quit and sur-

render the premises on a date certain in the future, namely, March 31, 1954, the termination date of the said lease.

Tenant relies almost entirely on a decision rendered by Mr. Justice STARKE of this court in the case of *Triboro Parking* v. *Blomeier* (203 Misc. 202, 208). In that case a lease containing a " quit and surrender " clause had expired *prior* to the effective date of the amended subdivision (g). Citing and following the decision in *Romos Corp.* v. *World Toy Mfg. Corp.* (*supra*), Mr. Justice STARKE held that the amended statute was not retroactive, and that, the lease (even if it could be construed as an agreement to vacate), could not be used under the statute to evict the tenant. Having disposed of the case, Mr. Justice STARKE proceeded to make certain cogent and forceful observations which this court cannot follow in view of the decision of Mr. Justice HECHT in the case of *City Bank Farmers Trust Co.* v. *Rival Shoe Co.* (*supra*), which was unanimously affirmed by the Appellate Division (279 App. Div. 1059).

A lease is a form of an agreement. " A lease is a contract between a landlord and a tenant for the occupation of real property and contains clauses for the protection of both and terminates upon a definite day agreed upon by all parties." Mr. Justice BRISACH, in *Nussbaum* v. *Garstaff Realty Co.* (197 Misc. 527, 528).

Fundamental rules of statutory interpretation require a court to construe a statute as it is written. The Legislature in writing subdivision (g), referred to agreements to vacate, and that term manifestly included *all* agreements to vacate in whatever form. The Legislature could have specifically excluded leases had it seen fit to do so. The fact that it did not, is the strongest evidence that it intended to make no such distinction or exclusion. It is not the function of a court to legislate under the guise of statutory construction. The court adopts the view expressed by Mr. Justice HECHT in his opinion.

Two situations are envisaged by subdivision (g): The first covers a tenant " *in possession* under *an expired lease* or tenancy or as a *monthly* or *statutory* tenant," who enters into an agreement in writing to vacate upon a date certain in the future. No waiting period or lapse of time is required in this situation.

The second covers " a tenant *in possession* under a lease not yet expired " who enters into an agreement in writing to vacate on a date certain in the future. In this situation the law requires a three-month interval between the commencement date of the unexpired lease and the execution of the agreement to vacate.

The first, and not the second portion of the statute, applies to this case. When the tenant Dyer signed the lease on March 28, 1952, he was a tenant *in possession* as a *statutory tenant.* He was not then a tenant in *possession* under an unexpired lease. He had signed a lease on that day to begin on April 1, 1952; but his possession of the premises on March 28th, 29th, 30th and 31st continued under his status as a statutory tenant, and he did not get possession of the premises *under the lease* until April 1, 1952. Consequently, when he entered into the agreement to vacate as a part of the lease agreement on March 28, 1952, he was then in possession of the premises solely as a statutory tenant and was not then in possession under a lease not yet expired. Therefore, under the clear provisions of the statute, only the first portion of subdivision (g) could apply to the situation, and the second portion is inapplicable. This was the view of Mr. Justice EDER in *Romos Corp.* v. *World Toy Mfg. Corp.* (*supra*), wherein he held that the first portion of subdivision (g) would clearly apply to a statutory tenant who entered into an agreement of lease (containing an agreement to vacate) if such lease were entered into after the effective date of the amended subdivision (g).

As was said by the Court of Appeals in *Steinberg* v. *Forest Hills Golf Range* (303 N. Y. 577, 584): " The exceptional provisions of subdivision (g) were enacted in 1949 (L. 1949, ch. 535) to validate specific types of agreements not entered into under the compulsion of the emergency."

On March 28, 1952, the tenant Dyer was a statutory tenant of the store premises. He was privileged to continue as such a statutory tenant during the continuation of the emergency, which at that time was scheduled by statute to expire no later than June, 1953. He voluntarily, however, entered into an agreement of lease with the then landlord, which, among other things, gave him a portion of the landlord's premises (the shop) to which he was not entitled, and further assured his tenancy to March 31, 1954, a period well beyond the then slated termination of the emergency. He was not compelled to enter into this agreement of lease by the compulsion of the emergency. He did so voluntarily and for the obvious purpose of obtaining the two benefits above mentioned which bettered his then status as a statutory tenant. As a part of the lease, he agreed voluntarily to quit and surrender the premises on its expiration date, March 31, 1954. This voluntary agreement to vacate renders inoperative the noneviction provisions of the emergency rent laws and

authorizes the landlord now to evict the tenant and his subtenants from the entire premises.

Final order is therefore awarded the landlord against the tenant and undertenants awarding it possession of the entire premises. Settle such final order on two days' notice. The court is aware of the statutory limitation as to stay of warrant in summary proceeding wherein a final order is directed for the landlord under subdivision (g), as in this case, and recommends that landlord consent to stay of such warrant to September 30, 1954, on condition tenant pay for use and occupation of demised premises at rate of monthly rental heretofore paid.