MIMI FISCHEL, Plaintiff, *v.* S. W. STEEL MANAGEMENT Co., INC., Defendant.

Supreme Court, Special Term, New York County, September 15, 1955.

*Wallstein, Menschel & Wallstein* for defendant.

*Sidney S. Bobbe* for plaintiff.

HECHT, J.   On or about December 14, 1944, plaintiff and her partner, jointly and severally entered into a lease of commercial or business space with the owner of the property for a term of one year, from January 1, 1945, to December 31, 1945. After the expiration of that lease, plaintiff took over the business in its entirety and became the sole tenant.   No further lease was executed until on or about January 31, 1950, when plaintiff entered into a written lease for a term of three years and three months, from April 1, 1950, to June 30, 1953.   This lease provided that " Upon the expiration or other termination of the term of this lease, tenant shall quit and surrender to landlord, the demised premises, broom clean, in good order and condition, ordinary wear and damage by the elements excepted. * * *   Tenant shall remove all property of tenant as directed by landlord and failing so to do, landlord may cause all of the said property to be removed at the expense of tenant and tenant hereby agrees to pay all costs and expenses thereby incurred ".

Subdivision (g) of section 8 of the Commercial Rent Law and of the Business Rent Law (L. 1945, chs. 3, 314, as amd.) was amended in 1949 (L. 1949, chs. 534, 535) so as to permit the eviction of a tenant where " [t]he tenant, being in possession under an expired lease agrees in writing to terminate his occupancy of the premises on a date certain in the future, or a tenant in possession under a lease not yet expired agrees in writing, by agreement executed not less than three months after the commencement of the term thereof, to terminate his occupancy at any time before or after expiration of the term of such lease."

In the court's opinion, plaintiff, at the time the 1950 lease was entered into, was in possession under an expired lease. The fact that plaintiff's partner had also been in possession under that lease and had given up possession subsequent to its expiration is immaterial.   Plaintiff's possession was nevertheless under an expired lease.   It follows that plaintiff's written agreement to terminate her occupancy at the expiration of the 1950 lease authorized the landlord to evict her after that time under the express language of subdivision (g) of section 8 as it read at the time of the 1950 lease.   The fact that the agreement to terminate her occupancy was contained in the 1950 lease and was not the subject of a separate agreement is of no impor-

tance (*City Bank Farmers Trust Co.* v. *Rival Shoe Co.,* 198 Misc. 1002, affd. 279 App. Div. 1059; *Gaulang Realty Co.* v. *Dyer,* 207 Misc. 480, affd. *sub nom. Seligson* v. *Dyer,* 207 Misc. 489). The covenant of the tenant in *City Bank Farmers Trust Co.* v. *Rival Shoe Co. (supra)* was held to construe an agreement to terminate its occupancy within the meaning of subdivision (g) of section 8 " at the end or other expiration of said tenancy " (p. 1005) to " deliver up the demised premises in good order or condition, damages by the elements, or other repairs to be made by landlord, excepted " (p. 1004).

In 1951, subdivision (g) of section 8 was amended by adding, after the words " the tenant being in possession under an expired lease " the following " or tenancy or as a monthly or statutory tenant ". (L. 1951, chs. 430, 431.) This amendment merely extended the scope of subdivision (g) of section 8 to tenants who were not in possession under an expired lease. It did not destroy the validity of the agreement theretofore made by plaintiff, a tenant under an expired lease, to terminate her occupancy. No question of the retroactivity of the 1951 amendment to the 1950 agreement is presented here, for that agreement was valid at the time it was made under subdivision (g) of section 8 as it then read.

Plaintiff urges that the provision of the 1950 lease heretofore quoted does not comply with subdivision (g) of section 8 because it does not fix " a date certain " for the termination of the plaintiff's occupancy. This contention is predicated upon the fact that the provision in question reads " upon the expiration or *other termination* of the term of this lease " (emphasis supplied). The " other termination " refers to various contingencies specified in the lease which would shorten the term, such as fire, the exercise of eminent domain, violation of covenant, bankruptcy, etc. In the court's opinion the plaintiff has agreed to terminate her occupancy on a day certain, namely, June 30, 1953, notwithstanding the fact that plaintiff has, in addition, covenanted to terminate her occupancy at an earlier date in various specified contingencies. Defendant is seeking to hold plaintiff to her covenant to surrender occupancy on June 30, 1953, and is not seeking to enforce any of her covenants to terminate her occupancy at an earlier date. Plaintiff has made an agreement to terminate occupancy on June 30, 1953. This complies with subdivision (g) of section 8. The fact that plaintiff has also covenanted to surrender possession before that date in certain contingencies does not have the effect of nullifying for the purposes of subdivision (g) of section 8 her

consent to quit on June 30, 1953. Although the analogy is not perfect because the subject is covered by express statute, it is worth noting that an instrument is payable at a fixed determinable future time within the meaning of section 20 of the Negotiable Instruments Law, if it is payable " [o]n *or before* a fixed or determinable future time specified therein ". (Negotiable Instruments Law, § 23.) (Emphasis supplied.)

Nor does the fact that the defendant took no steps to evict plaintiff for almost two years after June 30, 1953, revive the rights plaintiff had prior to the making of the 1950 lease. Subdivision (g) of section 8 contains nothing to suggest that a landlord in order to avail himself of an agreement complying with subdivision (g) of section 8 may take steps to evict the tenant immediately upon the arrival of the date fixed in such agreement for the termination of the tenant's occupancy. As the section reads, it would seem that a tenant making an agreement complying with subdivision (g) of section 8 loses *permanently* the protection against eviction he would otherwise have had once the date fixed for the termination of his occupancy arrives. It should be borne in mind that the plaintiff was under no compulsion or duress to enter into the 1950 lease. She could have remained in possession on paying the proper rent as long as the rent control laws continued to permit her to do so. At the time the 1950 lease was entered into plaintiff had no way of knowing how long the rent laws would continue to protect her occupancy. She chose to assure herself of occupancy for three years and three months and, in return, agreed to surrender possession at the end of that time. Had the rent control law been permitted to lapse before the end of the terms of the lease, as they might have been, plaintiff would have obtained an advantage by executing the lease.

Plaintiff's original contention that the 1950 lease was void because of a discrepancy between the rent fixed in the fair rental agreement and the requirements of the lease has been expressly abandoned.

By stipulation of the parties the second prayer for relief has been withdrawn from the complaint. The question of the propriety of the water charges is, therefore, not presented for adjudication. Plaintiff is not entitled for the reasons heretofore given to any of the other relief sought in the complaint. Defendant is entitled to the judgment sought in its answer. Defendant's motion for summary judgment dismissing the complaint and awarding the relief sought in its counterclaim is granted.

**Settle order.**