Louis B. Heller, J.
In this article 78 proceeding, petitioner, the owner of a 42-apartment building (129 Columbia Heights, also known as One Clark Street), seeks to review and to annul the respondent’s determination which denied its protest and affirmed the order of the District Bent Director that denied certificates of eviction for its 14 controlled apartments. The Bent Commissioner’s determination was made pursuant to the amended City Bent Law banning the issuance of such certificates to those institutions which sought to replace rent-controlled tenants with members of its own staff.
It is not disputed that petitioner, commonly known as Jehovah’s Witnesses, “is a non-profit membership corporation wholly organized, chartered and authorized to function in this State [since 1909]. Its charter-decreed purposes, among others, are ‘ charitable, benevolent, scientific, historical, literary and religious purposes ’ ”.
Petitioner acquired this property by purchase on May 26, 1964. Approximately four and one-half years thereafter on January 9, 1969, the landlord filed its application to have the remaining 26 tenants occupying controlled housing accommodations, claiming it required the space exclusively ‘ ‘ for the purpose of housing its ministers in accordance with the tenets of petitioner’s religious beliefs and its charter-decreed purposes.” *893 Of this number, 12 tenants voluntarily relocated themselves following negotiations with petitioner, leaving the 14 occupants in possession of the apartments now sought by the landlord.
This proceeding was initiated pursuant to paragraph (3) of subdivision a of section 59 of the Rent, Eviction and Rehabilitation Regulations; and petitioner, over the tenants’ objections, belatedly amended its application to include subdivision e of section 55 of the regulations as additional basis for the relief sought. The latter subdivision e of section 55 provides: “A certificate shall be issued where the landlord establishes that it is an organization exempt from taxation under the Federal Internal Revenue ’Code, and that it seeks in good faith to recover possession of the housing accommodations for immediate and personal use and occupancy as housing accommodations by members of its staff.”
Gleaned from the voluminous record is the fact that in the course of processing the landlord’s application, the District Rent Director in his order issued June 30, 1969, stated inter alia: “ Therefore, in accordance with paragraph b of Section 59 of the Regulations which provides that ' an order granting a certificate of eviction may only be issued on condition that the landlord comply with the relocation requirements of paragraph e of Section 54 of these Regulations,’ the landlord is required to submit proof of compliance with such relocation requirements. Please study carefully the attached general statement of Relocation Requirements and procedures for offering a relocated accommodation, the suitability of which is to be determined by the Office of Rent Control.” (Emphasis supplied.) The record further shows that while petitioner was proceeding to meet the relocation mandate, an interim order was thereafter issued by the District Rent Director on October 6,1969 staying petitioner’s relocation efforts and all proceedings pursuant to section 59 of the regulations.
It appears that due to the “ extreme housing shortage which had seen the vacancy rate in New York City decline to less than 1% according to the most recent Bureau of the Census statistics, and the necessity for the first time of imposing rent controls on post-February 1, 1947 apartments ”, this present emergent status caused respondent to recommend to the City Council that it immediately consider amending the city Rent and Rehabilitation Law. Upon such urging the Legislature acted and found the “ drying up” of vacancies in rent-controlled apartments resulted in great measure where apartment buildings were owned by eleemosynary institutions which seek to *894 evict rent-controlled tenants and replace them with members of their staff, who, either receive housing accommodations as a part of their remuneration, or who actually pay rent to the institution. It became evident that the dearth of such apartments would ring the death knell of the City Rent and Rehabilitation Law and regulations, the only protective cloak controlled tenants have.
Thus, after considering the grave problem with which it had to deal since it affected thousands of the city’s dwellers, the City Council on June 26, 1970 passed Local Law No. 30 of the Local Laws of 1970 of the City of New York, amending the City Rent and Rehabilitation Law. In particular, petitioner found objectionable the amendment to subdivision e of section Y51-6.0 of the Administrative Code of the City of New York which banned the issuance to the described institutions of certificates of eviction of rent-controlled tenants. As here pertinent, the new amendment (§ Y51-6.0, subd. j, par. [2] of the Administrative Code [tit. Y, ch. 51] effective July 23, 1970), provides: “No certificate of eviction shall be issued to a non-profit school, college, hospital, or other charitable institution, including without limitation, any organization exempt from taxation under the Federal Internal Revenue Code, which seeks to recover possession of the housing accommodations or to withdraw such accommodations from the rental or non-rental housing market, for immediate and personal use and occupancy as housing accommodations by its employees, students, or members of its staff.”
There is no question but that petitioner could have obtained the relief sought were it not for the amendment to the rent law (Local Laws, 1970, No. 30 of City of New York) which banned the issuance of certificates of eviction in cases such as here considered. However, petitioner need not have waited four and one-half years to file its application. The law and regulations benefit the tenant and landlord alike under proper circumstances. The concept of minimizing and preventing hardship to controlled tenants was of serious concern to the ■City Council. Consideration of the record and all the submitted papers shows that petitioner and its attorney recognized the shortage of housing and the hardship resulting from compulsory evictions. Such concession lends support to the legislative performance here challenged. Petitioner’s attorney concedes, “ that in some instances the resultant dislocation of tenants may cause inconvenience, or even hardship, the statute and regulations have prescribed a strict procedure for reloea *895 tion of tenants. The Society has till now and will in the future diligently and rigorously abide by these rules. The Tenants are bound by law to do likewise for that is their full measure of relief under the law and in equity.” Petitioner’s plaint of housing shortage for its staff gives emphasis to the thousands of controlled tenants suffering hardship. Mr. Larson, an officer of the landlord, states in his affidavit, paragraph 7, subdivision (a), page 6: “ There exists at the present time a severe shortage of housing, which is indispensable to the necessary functioning of the Society.”
Petitioner claims the amendment is unconstitutional because it allegedly deprives the owner of its property without due process of law since it denies him the right to evict the 14 controlled tenants and prevents it from withdrawing the property from the rental market. Pertinent here, Is the Court of Appeals statement in Loab Estates v. Druhe (300 N. Y. 176, 180): “Confronted with the threat of ‘ chaos and confusion ’ * * * and impelled to balance the conflicting interests of landlords and tenants in possession, the city council and Legislature have concluded that the former must suffer a temporary restraint upon the right to withdraw their property from the rental market. * * * As legislation designed to meet an immediate and pressing exigency, the local law cannot be held to operate as a ‘ taking ’ of appellant’s property without due process of law.” It must be apparent that the expeditious enactment of the challenged statute resulted from a recognition by the City Council of the worsening situation in the continuing serious housing crisis. It should be pointed out that no legislative body can be prevented from performing its legislative duty. The court reiterates, had the owner acted earlier and promptly instead of commencing these proceedings four and one-half years after acquiring title to this structure, beyond question it would have achieved the result sought. However, there is ample evidence that petitioner did not complete its relocation activities prior to the stay, nor is there any showing that respondent finally determined the proceeding prior to the enactment of the amendment here challenged. It is indeed settled that the law in effect when the determination is made, governs (Matter of Keosian v. Berman, 27 N Y 2d 941); that until there is such a final rendition, the Bent Commissioner’s performance of his duties pursuant to the rent law and regulations may not be impeded or prevented. Any effort to paralyze and estop the respondent in the performance of his lawful duties, cannot succeed. (Matter of 225 East 70th St. Corp. v. Weaver, 6 N Y 2d 197, 203.)
*896 Regarding the “ stay ” ordered by the District Director, the court finds that under the conditions then existing the Director’s action was proper and well within his power. Such “ stay ” froze the activity of the landlord in relocating tenants. This situation is in the court’s opinion analogous to the “ freeze and rollbacks of rents ” which the Court of Appeals found to be constitutionally acceptable, and the court saw ‘ ‘ nothing unconstitutional about the method used by the Legislature. ’ ’ (I.L.F.Y. Co. v. Temporary State Housing Rent Comm., 11 N Y 2d 259, 265, 266.)
It is clear that the policy considerations underlying the subject enactment exemplify the intention of the Legislature to broaden the protective coverage for occupants of rent-controlled housing accommodations. The City Council was satisfied, following consideration of this subject, that institutional certificates of eviction, under the statute prior to amendment, resulted in too many removals of tenants whom the rent laws and regulations were intended to benefit. That the basic purpose of this emergent1 ‘ legislation was to protect tenants * * * by preventing widespread evictions,” is not a new concept. It was approved in Morse & Grossman v. Acker Co. (297 N. Y. 304, 310). Albeit petitioner is a nonprofit membership corporation and not a 1 ‘ religious entity ’ ’ authorized to function in this State, the challenged amendment in no way prevents, infringes upon, or violates its rights to conform its practices and purposes to the charter granted it. Petitioner fails in its effort to show the contrary.
The burden of demonstrating unconstitutionality rests upon the one asserting it and only as a last unavoidable resort will the court strike down a legislative enactment as unconstitutional. (Grimm v. City of New York, 56 Misc 2d 525, 526, citing Matter of Spielvogel v. Ford, 1 N Y 2d 558, 562, app. dsmd. 352 U. S. 957.) Further, the court in Grimm stated (p. 527): ‘ ‘ The test for determining the constitutionality of a statute is to ascertain whether the legislative body had a reasonable basis upon which to act and whether the enactment is reasonably related to some actual manifest evil.” Nor may the court decide the wisdom of the legislative enactment. (Grossman v. Baumgartner, 17 N Y 2d 345, 350.)
The petitioner has raised virtually every constitutional objection to the amendment. However, upon all the submitted papers the court finds no basis to support the owner’s claim that the subject amendment is violative of its civil rights or any of its rights under the Federal or State 'Constitution. In sum, a *897 statute which respondent helped to draw and propose to the City Council and the regulations promulgated thereunder, are entitled to great weight and should be followed by the court. (White v. Winchester Club, 315 U. S. 32, 41; Hotel Armstrong v. Temporary State Housing Rent Comm., 11 A D 2d 395.) Further, “ Courts are not supposed to legislate under the guise of interpretation, and in the long run it is better to adhere closely to this principle and leave it to the Legislature to correct evils if any exist.” (Bright Homes v. Wright [Herman], 8 N Y 2d 157,162.)
From the court’s examination of the record and all the submitted papers, it finds that respondent’s determination is neither arbitrary, capricious nor unlawful. The application is accordingly denied and the petition dismissed.