H. KAUFFMAN & SONS SADDLERY Co., INC., Appellant, *v.* JOSEPH MILLER, Doing Business as MILLER HARNESS Co., Respondent.

Argued May 20, 1948; decided June 11, 1948.

*Alfred L. Krasner* for appellant. I. The pleadings and affidavits read on the motion for summary judgment establish respondent's liability. (*Settle* v. *Van Evrea*, 49 N. Y. 280; *Rothbard* v. *Averell*, 59 N. Y. S. 73; *Twentieth Century Assn.* v. *Waldman*, 294 N. Y. 571; *American Historical Soc.* v. *Glenn*, 248 N. Y. 445.) II. The courts should not legislate. (*Matter of Hering* v. *Clement*, 196 N. Y. 218; *Noel Associates* v. *Merrill*, 184 Misc. 646; *People ex rel. Doctors Hospital* v. *Sexton*, 295 N. Y. 553; *Lawrence Constr. Co.* v. *State*, 293 N. Y. 634; *Matter of Erikson* v. *Cohen*, 243 App. Div. 1; *Matter of McNerney* v. *City of Geneva*, 290 N. Y. 505; *Jablon* v. *City of New York*, 177 Misc. 838.)

III. On a motion for summary judgment, if the court ascertains that there is a triable issue, it should refuse to determine the issue on affidavits and relegate the parties to a trial.

*Claude L. Gonnet* and *Arthur Frank* for Charles Maruzzella and others, *amicus curiæ,* in support of appellant's position. To construe the act as sanctioning the reletting of a substantial part of the demised premises during the statutory period of one year following dispossess is to promote the evil and to help unscrupulous landlords defeat the dominant intent of this remedial legislation. (*Twentieth Century Associates* v. *Waldman,* 294 N. Y. 571; *A. E. F.'s Inc.,* v. *City of New York,* 295 N. Y. 381; *People ex rel. Durham R. Corp.* v. *La Fetra,* 230 N. Y. 429.)

*Jerome L. Greene* for respondent. I. Neither the Emergency Rent Law nor article 83 of the Civil Practice Act permits dispossess of a tenant of a whole building, occupying under a single tenancy, from part of the space. Respondent, having taken possession of and having used the entire building, and thereafter having rented part of the building to third persons, cannot be charged with liability under the Emergency Rent Law. (*People* v. *Ryan,* 274 N. Y. 149; *Gross* v. *Libby Properties, Inc.,* 72 N. Y. S. 2d 918; *Matter of Fay,* 291 N. Y. 198; *Matthews* v. *Matthews,* 240 N. Y. 28.) II. By the very terms of the statute, good faith is not an issue. In any event, good faith must be presumed since respondent has at all times occupied a substantial part of the premises. There are no issues of fact to be determined, it being admitted that respondent at first used and occupied the entire premises and thereafter rented part of the premises, but at all times retained the use and occupancy of two floors of the premises.

FULD, J. This appeal presents another aspect of the emergency rent legislation affecting property in the city of New York.

In 1942, plaintiff rented an entire five-floor building in the borough of Manhattan, for an indefinite term, for the conduct of its business. Four years later, in May of 1946, defendant bought the building. Shortly thereafter, claiming that he needed it for his own commercial use, he began a summary dispossess proceeding in the Municipal Court of the City of

New York to remove plaintiff from possession pursuant to subdivision (d) of section 8 of the Commercial Rent Law (L. 1945, ch. 3, as amd. by L. 1946, ch. 272). After a precept had been issued by the clerk of the Municipal Court and after it had been served upon plaintiff, the latter consented to the entry of a final order of dispossession and voluntarily vacated the premises on August 31, 1946. A surrender under such circumstances constitutes a dispossession within the meaning of the rent laws (*Sno-Wite, Inc.*, v. *Gerald Operating Corp.*, 297 N. Y. 1007, decided May 20, 1948, affg. 271 App. Div. 314).

A short time later, defendant took over the entire building. He did not, however, continue in sole occupancy; about a month or so thereafter, on November 1, 1946, he rented two of the five floors to other parties and three months later, on February 1, 1947, rented a third floor to another tenant. Thus, it appears without dispute that defendant, within a short time of plaintiff's removal from the premises, relet to third parties 60% of the space vacated by the tenant.

Plaintiff, pointing to the provisions of subdivision (d) of section 8, maintains that the facts asserted — namely, that the landlord dispossessed the tenant and then rented part of the tenant's space to third parties — establish, without more, the tenant's right to damages. On the other hand, defendant contends, since he continues in the use and occupancy of a portion of the space vacated by the tenant, he may not be charged with any liability under the rent law. The court at Special Term adopted that view and dismissed the complaint; the Appellate Division, two justices dissenting, affirmed.

In the clearest of language, the Legislature has, in the introductory sentence of section 8 of the Commercial Rent Law, prohibited a landlord from removing a rent-paying tenant from " any commercial space " unless the landlord comes within one of several enumerated exceptions. One of those exceptions is contained in subdivision (d). Upon the strength of that subdivision, a tenant may be dispossessed by a landlord who " seeks in good faith " to recover " the [tenant's] commercial space for his immediate and personal use ". However, the statute continues, if the landlord, having acquired the space, (1) " shall fail," within thirty days of the tenant's dispossession, " to

occupy such space and actively to conduct such business therein," or (2) " shall lease or rent such space to or permit occupancy thereof by a third person within a period of one year " of such dispossession, " he shall be liable to the tenant for all damages sustained on account of such removal."

A landlord may not, we recently held, remove or dispossess a tenant from a portion of his rented premises; a landlord must, to avail himself of the privilege granted by subdivision (d), dispossess the tenant from all of the space occupied by him. (See *Morse & Grossman, Inc.*, v. *Acker & Co.*, 297 N. Y. 304.) Such a ruling does not, however — as defendant herein urges — justify the tenant's ouster from all of his space if the landlord has need of but a fraction of it. By forbidding a tenant's removal from any of his space, the Legislature has made it manifest that the landlord may invoke the provisions of subdivision (d) and dispossess the tenant from his space — whether it be floor, building or other rental area — only if the landlord seeks all of it for his own use. The language of the statute is too clear to permit the argument that a landlord may dispossess and then relet to others. If the result seems to work hardship upon a landlord who requires but a portion of his tenant's premises, recourse must be to the Legislature, and, in that connection, we note the current suggestion of a legislative body that the statute be amended to permit the owner " to repossess part " of the premises. (See Report of the New York State Joint Legislative Committee to Study Rents, dated March 8, 1948, N. Y. Legis. Doc., 1948, No. 47, p. 14.) As the statute now stands, if a landlord were to be permitted to dispossess a tenant from all of his space and then to rent the part which he knew he did not need — perhaps at a higher rental — " circumvention of the emergency rent legislation would be facilitated, its evasion encouraged." (*Morse & Grossman, Inc.*, v. *Acker & Co.*, supra, p. 312.)

We are brought, then, to the second and final question posed by this appeal — a question somewhat more difficult of solution. The statute allows the tenant damages if the landlord, having regained possession, either fails to occupy and carry on his business within thirty days or relets the space to third persons within a year. Does it thereby impose upon the landlord an absolute and inexorable liability — irrespective of good or bad

faith — if he disregards the restrictions placed on his use of the vacated space?

A strict and literal reading of the statutory language may suggest an affirmative answer, and some support is given such a conclusion by the circumstance that the immediately preceding subdivision (c) of section 8 — permitting a landlord to evict a tenant in order to demolish the building — expressly exonerates the landlord from liability if he failed within a specified time to accomplish demolition " for good cause shown ". There is no clue, either in the legislative history or in the scheme of the rent laws, for the variance in the language of the two subdivisions. No operative significance may, however, be attached to the omission from subdivision (d) of a similarly explicit exonerative clause, for in the first sentence of that subdivision the Legislature has indicated that " good faith " is the determinative factor. Removal of a tenant is there sanctioned at the hands of the landlord who " seeks in good faith " the space for his own use. In our view, the landlord complies with the statute's demands if he brings the eviction proceeding with the intention " to occupy such space " and " actively to conduct " his own business therein. He is not, in other words, permitted to oust the tenant for the purpose of reletting the space to others. But the Legislature well knew that a tenant might, at the time of his ouster, find it impossible to disprove the landlord's claim that he was acting in " good faith ". Accordingly, it provided that the tenant might rely upon the landlord's subsequent conduct to establish his improper motives in dispossessing him. Thus read, reasonable meaning attaches to the provision that the landlord must begin active conduct of his business on the vacated premises within the thirty days following, and must not permit a third person to occupy the space within the year following, under penalty of becoming liable to the tenant in damages. In effect, these conditions were inserted to test, retroactively, the good faith of the landlord in accomplishing the tenant's dispossession. Their observance would indicate that his motives had been proper and truly represented; their breach would tend to prove that his intentions were, from the outset, improper and ulterior. In the latter event, charging him with the damages sustained by the tenant would be a just and effective sanction.

Neither the reason of the statute nor the dictates of good sense and common fairness, however, point the conclusion that the landlord was to be liable, absolutely and inescapably, if he rerented the vacated space within a year. At most, his breach of one or another of the conditions specified casts doubt on his assertion that he had initially acted in good faith.

To read the provision otherwise, to construe it as rendering the landlord responsible even though he acted properly and in good faith throughout, would be to attribute to the Legislature an intent to accomplish a most unjust and unreasonable result. It could not have been the legislative purpose to charge the landlord with liability if changing and unforeseen circumstances — illness or adverse business conditions — made uneconomical or ill-advised his continued use of all of the space obtained from the tenant. Were this not so, a landlord who became ill or whose business prospects suddenly and unexpectedly deteriorated after he went into possession would be helpless to retrieve his situation in any way. He would be forced either to keep the property uneconomically and wastefully untenanted — a result startlingly at odds with the whole scheme of the emergency rent laws — or, upon rerenting it, become liable to the tenant for damages.

We find no such unreasonable and impossible choice dictated by the scheme of the statute and reject an interpretation of its words which would so clearly offend against common sense. Where the language of a statute is susceptible of two constructions, the courts will adopt that which avoids injustice, hardship, constitutional doubts or other objectionable results. (See *People* v. *Ryan,* 274 N. Y. 149, 152; *Matter of Emerson* v. *Buck,* 230 N. Y. 380, 388; *People ex rel. Municipal Gas Co.* v. *Public Service Comm.,* 224 N. Y. 156, 165; *Matter of Meyer,* 209 N. Y. 386, 389.) Quite clearly, the evil which the Legislature sought to suppress by imposing a liability for damages upon the landlord was the possibility that he would abuse the eviction machinery provided by subdivision (d). The Legislature undoubtedly realized the propriety and justice of allowing a landlord the use of his own property insofar as such use did not frustrate its wider scheme of preventing unjust evictions and excessive rents. The legislative purpose unquestionably was to forbid a landlord, under penalty of a suit for damages,

from evicting a tenant under the pretense and guise that he needed the space for himself and from then renting it to others at an increased rental. By permitting a tenant a cause of action only against a landlord who had not acted in good faith, the Legislature has accorded adequate protection to tenant and to public without visiting upon the landlord unfair and oppressive consequences. By reading the provision in this reasonable manner, the design of the statute is effectuated without working injustice upon any one.

In the present case, the landlord claims that, when he instituted the dispossess proceedings, he intended to occupy the entire building for his own use, and was induced to rent several of the floors " only because of the subsequent change in business conditions ". The question of fact, thus raised, as to the landlord's good faith must be determined upon a trial.

In conclusion, then, a landlord may acquire possession of a tenant's space, in accordance with subdivision (d) of section 8 of the Commercial Rent Law, only if he intends, in good faith, to use all such space for his own immediate and personal use. If, under protestations of good faith, he succeeds in evicting his tenant, he assumes the burden of proving — if the tenant thereafter brings suit — that his subsequent act in renting some of that space within a year was dictated by unforeseen and justifiable circumstances; failing to do so, he is liable in damages to the tenant. Thus, in this case, the motion made by plaintiff for summary judgment was properly denied, but, since a good and valid cause of action was alleged, the complaint should not have been dismissed.

The judgments and orders of the Appellate Division and Special Term should be reversed insofar as they dismiss the complaint, with costs to plaintiff in this court and in the Appellate Division.

LOUGHRAN, Ch. J., LEWIS, CONWAY, DESMOND, THACHER and DYE, JJ., concur.

Judgment accordingly.