In the Matter of DUDLEY T. HILL, Petitioner, against BOARD OF EDUCATION OF CENTRAL SCHOOL, DISTRICT No. 2 OF TOWNS OF GLENVILLE, SCHENECTADY COUNTY, AMSTERDAM, MONTGOMERY COUNTY, AND CHARLTON, SARATOGA COUNTY, Respondent.

Supreme Court, Special Term, Schenectady County, February 28, 1955.

*Richmond D. Moot* for petitioner.

*Roy W. Peters* for respondent.

HUGHES, J. The facts upon this proceeding are undisputed.

On April 12, 1954, a special district meeting of Central District No. 2, was held to vote upon a proposition authorizing the construction and equipment of a new high school building on the present site, and on additional land to be purchased, at an estimated cost of $2,266,000; to authorize the issue of bonds therefor, and to authorize the levy of a tax to be collected in installments for the payment thereof. At the time of the special district meeting the school district had an aggregate assessed valuation of taxable real property of over $100,000. A debt statement of the school district filed for the fiscal year ending June 30, 1954, shows that on that date the outstanding bonded indebtedness of the school district was $2,521,000, and that the full value of the real property subject to taxation by said school district as of June 30, 1954, was $22,171,216. The debt statement of the school district for the fiscal year ending June 30, 1953, showed that on that date the full value of real property subject to taxation was $21,574,387 and the bonded indebtedness of the district on that date was $2,642,000. In both instances, the bonded indebtedness of the school district was in excess of 10% of the full value of the real property subject to taxation as determined by section 137.00 of the Local Finance Law. It may be reasonably inferred from the above that at all times during the fiscal year from June 30, 1953 to June 30, 1954, the indebtedness of the school district exceeded 10% of the full value of the real property subject to taxation in the district.

The proposition submitted to the qualified electors of the school district on April 12, 1954, and which was voted upon by ballot by a vote of 2,739 in favor and 1,806 against the adoption of the proposed proposition was in part as follows: " Shall the Board of Education of Central School District No. 2 of the Towns of Glenville, Schenectady County; Amsterdam, Montgomery County; and Charlton, Saratoga County, New York, be authorized to construct and equip a new high school * * * a total estimated maximum cost for the erection and construction of said new high school building and for the equipment thereof and for the purchase of land hereinafter described, together with incidental expenses making an estimated maximum cost of $2,266,000.00, which said sum of $2,266,000.00, shall be

raised by the levy of a tax upon the taxable property of said school district and collected in annual installments as provided by Section 416 of the Education Law, and in anticipation of such tax bonds of said school district shall be issued? ''

This proposition provided for the raising of $2,266,000 by the levy of a tax upon the taxable property of said school district and provided for the collection of said tax in annual installments as provided by section 416 of the Education Law and provided that in anticipation of such tax, bonds of said school district shall be issued. The proposition was silent as to subdivision d of section 104.00 of the Local Finance Law which provides in part as follows: '' Title; § 104.00 *Limitation on amount of local indebtedness which may be contracted* * * * d. A school district, other than a school district in a city, having an aggregate assessed valuation of taxable real property of one hundred thousand dollars or over, except for the payment of judgments, or compromised or settled claims against the school district, or awards or sums payable by the school district pursuant to a determination by a court, or an officer, body or agency acting in an administrative or quasi-judicial capacity, shall not issue bonds or bond anticipation notes, if the indebtedness of the school district determined pursuant to section 137.00 of this chapter will exceed ten per centum of the full valuation of the real property subject to taxation by the school district, unless: 1. The tax voted to be collected in installments in relation thereto, or the proposition for the approval of a bond resolution in relation thereto, shall have been voted or approved, as the case may be, by a two-thirds vote of the qualified voters voting thereon in person at the meeting or election called for such purpose; 2. The board of regents shall consent thereto; * * * As amended L. 1947, c. 902, § 2; L. 1948, c. 826, § 1, L. 1950, c. 608, § 2; L. 1951, c. 831, § 12, eff. May 1, 1951; L. 1951, c. 831, §§ 10, 11, 13, eff. Jan. 1, 1952.''

Section 104.00 of the Local Finance Law prior to the above amendments read in part as follows: '' no bonds shall be hereafter issued which make the total bonded indebtedness, at any time, exceed ten per centum of the aggregate assessed valuation of the real property within the bounds of such school district * * * L. 1943, c. 711, § 28.''

It may be noted that in amending the above statute, the legislation substituted the term '' full valuation '' for the term '' aggregate assessed valuation.'' Under the prior law, the aggregate assessed valuation reflected the assessment roll of the school district without the application of the equalization rates. The term '' full valuation '' is defined by subdivision 21

of section 2.00 of the Local Finance Law in part as follows: "21. The term 'full valuation', when used in relation to real property subject to taxation by a school district, shall mean the valuation which is derived by dividing the appropriate portions of the assessed valuation of the real property concerned, as shown by the last completed assessment roll of the school district, by the city and town equalization rates established by the authorized state officer or agency for the rolls on which such school district roll was based."

These amendments were in line with the need for increasing the capacity of school districts to meet their need for school construction. School district debt limits are now based on full valuation rather than assessed valuation. Prior to the change in the law the assessed valuation of a school district did not fluctuate as it does where equalization rates are applied in order to arrive at a statutory defined "full valuation". As a result propositions submitted to the voters in one year will require a two-thirds vote under subdivision d of section 104.00 of the Local Finance Law, and by a change in equalization rates in the following year will require only a majority vote under section 416 of the Education Law.

The petitioner's contention is that on April 12, 1954, the bonded indebtedness then outstanding was in excess of 10% of the full value of the real property subject to taxation by the school district, and that no additional bonded indebtedness could be contracted by the school district, unless by a two-thirds vote of the qualified voters voting thereon in person at a meeting called for such purpose, as provided by subdivision d of section 104.00 of the Local Finance Law. That is, that the proposition is won or lost at the time the vote is taken.

The respondent's position is that the proposition is neither won nor lost at the time that the special district meeting was held. That the qualified electors, at that meeting by a majority vote, gave the respondent the right to proceed at any time thereafter under said vote, provided that at the time of the issuance of bonds or bond anticipation notes, the determination required then would show that the gross indebtedness of the school district would not exceed 10% of the full valuation of the real property subject to taxation by the school district.

A study of the various sections of the Education Law and Local Finance Law reveals the following: Section 416 of the Education Law provides in part as follows: " § 416. *School taxes and school bonds.* 1. A majority of the voters of any school district, present and voting at any annual or special dis-

trict meeting, duly convened, may authorize such acts and vote such taxes as they shall deem expedient for making additions ''.

'' 2. * * * No such tax shall be authorized to be levied by installments as a condition precedent to the issuance of bonds or capital notes unless the notice of the meeting shall state that such tax will be proposed and the object or purpose thereof.''

Section 104.00 of the Local Finance Law (*supra*) provides that a two-thirds vote is needed if the indebtedness of the school district determined pursuant to section 137.00 of the Local Finance Law will exceed 10% of the full valuation of the real property subject to taxation by the school district.

These sections create a condition precedent by requiring the voting of a tax to be collected in installments before the finance board can adopt the necessary resolution to proceed. This condition precedent is expressly stated in section 37.00 of the Local Finance Law as follows: § 37.00 *Referenda on bond resolutions or capital note resolutions; school districts* '' a. In a school district other than a city school district a bond resolution or a capital note resolution shall not be adopted by the finance board thereof (of a school district) unless a tax to be collected in installments shall have been voted in the manner provided in the education law, as amended from time to time, for the object or purpose for which such resolution authorizes the issuance of obligations.''

After a favorable vote is received at a special district meeting upon a proposition, a two-thirds vote of the voting strength of the finance board is necessary to enact a bond resolution. This procedure is different from that applicable to counties, towns, villages and other district corporations. In the latter the finance board proceeds to adopt a resolution, then submits the proposition for approval at either a mandatory or permissive referendum. (See Local Finance Law, §§ 33.10, 35.00, 36.00, 38.00.) If the latter method were applicable to the case at hand the proposition submitted to the qualified voters of the district on April 12, 1954, would have been lost. It remains to be seen whether the mere fact that the proposition is submitted to the qualified voters of the district in the first instance and then passed upon by the finance board should produce a different result.

Under section 416 of the Education Law and section 104.00 of the Local Finance Law the voters of the school district are vested with the necessary power to fulfill the necessary condition precedent by a majority vote or a two-thirds vote, and this power is not subject to change by a subsequent state of facts which are

not in existence at the time that the vote is taken. It is not within the province of the board of finance to project the vote of the qualified voters into the future, on the basis of a new set of existing facts that were never before the qualified voters on the date of the special district meeting. The voters in the school district have the initial power over the proposition of erecting a new school building or acquiring a site for a school district schoolhouse. In the *Matter of Board of Educ. School Dist. No. 1* v. *Cole* (176 Misc. 509), the court in affirming the power of the Commissioner of Education to set aside the determination of the board and directing it to submit a proposition to a vote by the school district stated at page 510, the following: " The first alternative is immaterial here. The second one was to submit a proposition for the construction of a combined school on the Luzerne site at a cost of $342,000. This sum is substantially in excess of ten per cent of the assessed valuation of the district. The statute would require the approval by a two-thirds vote of the district and the consent of the Board of Regents. (Education Law, § 480, subd. 1.) "

The reference was to an existing state of facts upon which the vote was to be taken, and not to a future time.

Once a proposition is favorably acted upon by the qualified voters of a school district and the finance board adopts the necessary resolution by a two-thirds vote, it must then proceed to obtain the approval of the proposed plan and specifications by the Commissioner of Education pursuant to section 408 of the Education Law. Subsequently thereto, the board obtains its building quota and files the necessary debt statements in accordance with sections 109.00, 121.20, 137.00, 139.00 and 140.00 of the Local Finance Law. The filing of the debt statements is required to determine the debt contracting power of a school district. These sections of the law create further limitations of indebtedness of the school district, the purpose being to determine the financial condition and debt contracting margin at a time relatively close to the date of issuance of the bonds. They do not form the basis of validating or determining a vote upon a proposition which was submitted to the qualified voters under a different state of circumstances or facts which existed six months earlier.

The respondent's contention that the finance board may pick up a vote of the qualified voters at a special district meeting for a period of ten years is untenable. Section 41.00 of the Local Finance Law relates to the repeal of unexpended authorizations of the finance board. Subdivision 5 of section 416 of the Educa-

tion Law provides in substance that a vote by the qualified voters to raise money shall not be rescinded nor reduced except by another special district meeting called for that purpose.

The respondent board of education has made the contention that this action is premature. The resolution adopted and published by the board of education invoked the twenty-day estoppel clause of section 81.00 of the Local Finance Law. The board of education having expressly invoked the provisions of the Local Finance Law, cannot be heard to say that the action is premature. (See Local Finance Law, §§ 80.00, 81.00, 82.00, 83.00.)

A presumption of constitutionality attaches to every statute. (*Matter of Fay*, 291 N. Y. 198.) Where the language of a statute is susceptible of two constructions, the courts will adopt that which avoids injustice, hardship, constitutional doubts or other objectionable results. (*Kauffman & Sons Saddlery Co.* v. *Miller*, 298 N. Y. 38.) The determination here is consistent with the constitutionality of the statutes involved.

The respondent is asking this court to hold that the proposition submitted at a special district meeting of Central School District No. 2 on April 12, 1954, was neither won nor lost. This court cannot adopt that principle, and consequently, holds that the proposition was lost. This determination is made solely upon the basis of the proposition as submitted to the People on February 12, 1954.

Accordingly, the bond resolution of the respondent dated November 12, 1954, is declared null and void and it is permanently enjoined from constructing and equipping the new high school building and the purchasing of additional land therefor and of issuing bonds of said school district for such purpose and to pledge the faith and credit of said school district for the payment of principal and interest on such bonds and from levying taxes for the payment of principle and interest thereon.

Enter judgment accordingly.