EDWARD TARR, INC., et al., Appellants, *v.* PHOENIX PUBLICATIONS, INC., Respondent.

First Department, February 14, 1956.

190

*Maurice R. Whitebook* of counsel (*Lewis, Herrick & Whitebook,* attorneys), for appellants.

*Arthur C. Kellman* of counsel (*Goodman & Mabel,* attorneys), for respondent.

BERGAN, J. Plaintiffs were controlled tenants of commercial store space on the ground and second floors of 425 Madison Avenue. In November, 1954, defendant landlord notified plaintiffs that their tenancies were terminated as of December 31st of that year because of a bona fide offer of rental by another tenant and that they would be evicted if they did not remove before that time. The notice was given in pursuance of subdivision (k) of section 8 of the Business Rent Law (L. 1945, ch. 314, as amd.).

This statute (§ 8 generally) insofar as it becomes material here prohibits the removal of any tenant from any business space " by action or proceeding to evict or to recover possession " unless (subd. [k]) the landlord has received a bona fide offer for rental of the premises from another tenant under certain favorable and long-term conditions enumerated in the statute.

But if such a tenant in possession is removed, in accordance with the permission contained in subdivision (k), and the " prospective tenant shall fail, after thirty days subsequent to such dispossession, to occupy such store " the landlord shall be liable to the tenant " so dispossessed " for certain enumerated damages.

The plaintiffs did not move in response to the notice served on them and a removal proceeding was commenced against them in Municipal Court on the ground the landlord was entitled to the beneficial condition described in subdivision (k). On the trial of the proceedings the parties entered into a stipulation before the court. It was agreed that the tenants withdraw their answer; that the landlord be entitled to an order for the possession of the premises; and that the landlord pay the tenants $1,500 immediately after their removal and that general releases be executed by the parties. The $1,500 was deposited by the landlord in escrow.

The first cause of action against the landlord is based on the failure of the proposed new tenant, described in the notice and in the eviction proceedings, to occupy within thirty days of plaintiffs' dispossession the premises which plaintiffs had occupied. This cause has been dismissed at Special Term. No fraud or deception is pleaded or suggested by appellants.

It will be seen that although an order for the possession of the premises was entered in the Municipal Court, its entry was not against the resistance of the plaintiffs, but rather with their consent and for a consideration of $1,500 which they thought adequate to warrant their consent. The literal words of the statute seem to predicate a right of action against a landlord upon a removal by some actual force of public power or the effect of the imminence of such force. The general provisions of section 8 refer to a tenant " removed " from business space; and the subdivision (k) provisions authorizing the action against the landlord provide for liability in favor of a tenant " dispossessed ".

Thus, it has been held that a tenant who removes himself from property as the result of a written threat to commence a proceeding is not entitled to recover under this statute (*Rosner* v. *Textile*

*Binding & Trimming Co.,* 300 N. Y. 319). See, also, *Joanette Juniors* v. *Board of Home Missions of Cong. & Christian Churches* (298 N. Y. 826). On the other hand in *Sno-Wite* v. *Gerald Operating Corp.* (297 N. Y. 1007), a tenant who removed after a summary proceeding was commenced was held entitled to maintain the action. And, similarly, a tenant who consented to the entry of an order of dispossession after the commencement of the summary proceeding against him and voluntarily removed from the premises was held to have been dispossessed and entitled to the benefit of section 8 (*Kauffman & Sons Saddlery Co.* v. *Miller,* 298 N. Y. 38).

Only the mere formality of signing the release agreed to be executed remains to be done to entitle plaintiffs to payment of the agreed consideration. Both in its formalization by stipulation on the record in open court, and in its substance, the agreement to take $1,500 and in exchange to execute a release and to vacate the premises is a valid contract supported by a separate and valuable consideration.

It is true enough that the petition in Municipal Court which set in motion the removal proceedings alleged that the landlord sought possession for the special purpose sanctioned by the statute. If, yielding to the weight of power implied by the institution of the judicial proceeding, the tenant moved out, a cause of action would quite certainly exist, as it did in the *Kauffman & Sons* case (298 N. Y. 38, *supra*) when the statutory purposes pleaded in the petition were not later realized.

The alternatives confronting the tenants on the institution of the removal proceeding were quite sharply delineated. They could move, or what amounts to the same thing, wait to be evicted; and if the landlord did not use the premises within the statutory time for the statutory purpose, a cause of action would thereupon ripen; or, if in the development of later events it was seen the premises were used for the statutory purposes, nothing actionable would germinate either from removal by force of judicial power or by the tenant's yielding to the imminent force of that power.

But neither of these alternatives affecting rights under the statute was embraced by these plaintiffs. They considered the possibility that what it was alleged in the petition in the eviction proceeding the landlord intended to do with the premises, might not be done. They entered into a bargain disposing of that contingency by settlement.

There was no need for the landlord to pay money to the tenants to yield up their opposition to the eviction proceeding

if the landlord was certain to use the premises for the purposes prescribed by statute — for in that event the tenants would not be entitled to recover for eviction.

It was, therefore, an uncertain future event that was resolved by the settlement. The plaintiffs did not intend to, and did not, reserve any right of action against the landlord to survive the settlement if the landlord did not use the premises conformably with the statute. That was the very core of the subject matter of the compromise. The words of the stipulation contain no reservation. It is explicit that for the money paid by the landlord " [g]eneral " releases shall be executed. Nor is it possible to read any reservation by implication of a right to sue on the subject matter of the very contingency that was being composed by settlement.

The bargain included the right to formal entry of an order in the proceeding; but to describe it this way is surely to describe it incompletely. Plaintiffs agreed to such an order and vacated because they were paid to vacate. Because there was, in pursuance of a bargain and sale, a formal order of removal entered does not analogize this case to *Kauffman & Sons (supra)*. That case had a consent order of removal; but it was a consent induced by something quite different from the inducement shown by the record before us.

This is a consent order induced by a consideration which plaintiffs hold so valuable and subsisting that in their second cause of action here they seek to get the money held in escrow while withholding the execution of the release attached to the escrow deposit. Good sense and fairness are to be read into this statute. (*Kauffman & Sons Saddlery Co. v. Miller,* 298 N. Y. 38, 45, *supra.*) It is to be construed in a " reasonable manner " (*supra,* p. 45) in the light of its design and purpose.

A tenant who settles for a good consideration his potential rights in litigation which may or may not ripen from future acts of another party is scarcely aggrieved by the formalization of the agreed purpose by an agreed form of judicial order. Such a tenant cannot reasonably come within the statutory description of a tenant " so dispossessed ", and we ought not in fairness so read the statute as to give these plaintiffs a right to maintain this penalizing statutory action.

But if the plaintiffs were to be deemed entirely right in their argument for such an interpretation, there have been changes in statutory structure since the decisions in *Sno-Wite* (297 N. Y. 1007, *supra*) and *Kauffman* (298 N. Y. 38, *supra*) (both in 1948) which affect the rights of the parties in this action.

The first is an amendment to section 12 of the statute by chapter 417 of the Laws of 1952. In 1948 (L. 1948, ch. 677) this section in part provided that " [a]ny waiver of any of the provisions of this act shall be unenforceable and void ". In 1952 this was amended to read that " a release by a tenant, in writing and for a valid consideration, shall not be deemed to be such a waiver ".

A fair reading of this language is that a waiver may result from the stipulation in open court based on a valuable consideration as well as the releases to be given by the tenant in pursuance of such a consideration.

The other amendment is one first enacted in 1949 (ch. 535), and continued in substantially the same form in present subdivision (g) of section 8. This expressly allows a landlord to evict when the tenant agrees in writing to terminate his occupancy on a date certain.

A stipulation in open court fully meets the statutory condition of an " agreement in writing "; and a literal and actual eviction could follow such an agreement. This would be so especially for the reasons which we have explored, if the agreement had the support of a separate consideration. The decision in *Kober* v. *Kopelowitz* (284 App. Div. 892) moves in this direction and gives support to the order here reviewed.

The second cause of action for the recovery of the $1,500 held in escrow upon the settlement of the summary proceeding is not well pleaded in the absence of a setting up of a willingness by plaintiffs to execute a general release and it was properly dismissed with a conditioned leave to replead.

The order should be affirmed, with $20 costs.

BOTEIN, J. (dissenting). The complaint alleges that plaintiffs entered into a stipulation with the landlord consenting to the entry of a final order " upon the allegations of said petition " and that they vacated " [p]ursuant to said Final Order ". Since it is further alleged that the prospective tenant failed to occupy the space vacated pursuant to the order and that the space had been rented by other persons, a prima facie cause of action is set forth under the provisions of subdivision (k) of section 8. It must be borne in mind that this complaint was dismissed on the ground that it was insufficient on its face.

Subdivision (k) of section 8 provides for damages if the prospective tenant fails to occupy the store thirty days subsequent to " such dispossession ", i.e., " by action or proceeding to evict or to recover possession, by exclusion from possession, or otherwise " (§ 8). The cases of *Sno-Wite* v. *Gerald Operat-*

*ing Corp.* (271 App. Div. 314, affd. without opinion 297 N. Y. 1007) and *Kauffman & Sons Saddlery Co.* v. *Miller* (298 N. Y. 38) hold that when a tenant vacated the premises after the landlord commenced an eviction proceeding, there was a " dispossession " (§ 8, subd. [k]) rather than a voluntary withdrawal, and that the tenant could recover damages if the basis upon which the proceedings were predicated did not materialize.

In *Rosner* v. *Textile Binding & Trimming Co.* (275 App. Div. 760, revd. 300 N. Y. 319) and *Joanette Juniors* v. *Board of Home Missions of Cong. & Christian Churches* (273 App. Div. 999, affd. 298 N. Y. 826) complaints by tenants for damages were dismissed because they had vacated the premises *before* any proceeding had been instituted and so had not been technically dispossessed. Such situations were carefully distinguished from those confronting the court in the *Sno-Wite* (*supra*) and *Kauffman* (*supra*) cases.

The tenants' position here would appear to be stronger than in either the *Kauffman* or *Sno-Wite* cases, since it is alleged that not only were proceedings commenced, but that the case went to trial, that the landlord made what the trier of the facts could find to be a substantial showing of compliance with the statutory conditions, and that a final order was entered on the landlord's petition pursuant to which the tenants moved out.

The plaintiffs were confronted on the trial with the landlord's clearly indicated ability to prove the allegations of the petition. The landlord produced a prospective tenant who had entered into a ten-year lease. Rarely is a tenant in such a proceeding in a position to challenge the *bona fides* of the proposed leasing. Plaintiffs therefore sensibly decided to prolong the trial no further and to admit the landlord's allegations by stipulation. They should not be penalized for so doing. Otherwise, we would be advising tenants that in order to preserve their legal rights they must drag out the legal processes by resisting to the bitter end.

The *Sno-Wite* and *Kauffman* cases still express the law of this State, and the statutory changes enacted thereafter in no way vitiate their effect. Section 12 of the act originally provided that none of the provisions of the act could be waived. It was amended by chapter 417 of the Laws of 1952 to provide that a written release for a valuable consideration would not be construed as a waiver of the act. This amendment was designed to overcome the effect of the decision in *Estro Chem. Co.* v. *Falk* (303 N. Y. 83) which held that a written release of a cause of action for excessive rents was unenforcible even

though that cause of action had already accrued. (See N. Y. Legis. Doc., 1952, No. 61, p. 16.) However, a written release would apply only to claims in existence at the time (*Maruzzella v. Metro Associated Services,* 275 App. Div. 114). In any event, in this case the provisions of section 12 are inapplicable since the plaintiffs received no consideration and no release was in fact executed.

Nor can the plaintiffs' removal be deemed to have been pursuant to subdivision (g) of section 8, which was enacted by chapter 535 of the Laws of 1949. Unlike the tenants in *Kober* v. *Kopelowitz* (284 App. Div. 892) and *Spencer Secretarial School* v. *Association of Bar of City of N. Y.* (286 App. Div. 998) the plaintiffs here did not enter into an agreement in writing to vacate the premises independent of eviction proceedings. (Cf. *Lackey* v. *Hempel,* 276 App. Div. 909.) Instead, they expressly stipulated that their removal was pursuant to the provisions of subdivision (k) of section 8. Such a stipulation should not be tortured into a removal agreement under subdivision (g) of section 8.

Plaintiffs further allege that oral assurance was given that the acceptance of the $1,500 offer would not be a waiver of any future rights to sue for damages for violation of subdivision (k) of section 8. The stipulation is silent as to the release of rights not yet accrued, and plaintiffs allege that they refused to give a release unless it was expressly stated that such release would be without prejudice to their future rights. At the very least, therefore, this raises a question of fact (*Giannini* v. *Sheeran,* 276 App. Div. 760; *Diamant Typo. Service* v. *Garfield News Co.,* 83 N. Y. S. 2d 462, affd. 273 App. Div. 880).

Plaintiffs plead in their second cause of action that they are " ready and willing to execute and deliver said general release, without prejudice, however, to plaintiffs' right to claim damages under § 8(k) and otherwise." Even if it were to be determined that plaintiffs have no rights under subdivision (k) of section 8, they are entitled to the $1,500 which was promised to them upon their removal, and the allegations of their readiness to deliver the release are sufficient.

The order of the court below dismissing the complaint should be reversed, and the motion denied.

BREITEL, J. P., and RABIN, J., concur with BERGAN, J.; BOTEIN, J., dissents and votes to reverse in opinion, in which BASTOW, J., concurs.

Order affirmed, with $20 costs and disbursements to the respondent.