Edward J. Greenfield, J.
In this action by a former tenant seeking treble damages for wrongful eviction, the landlords having obtained a certificate of eviction for the purposes of constructing a new building, and then having failed to proceed with the construction, the justification offered by the defendants is the economic unfeasibility of proceeding because of delay by city agencies.
From January, 1963 to August, 1965 plaintiff was a tenant in the rent-controlled premises at 250 East 60th Street, in the Borough of Manhattan, where she occupied the first floor of a brownstone, consisting of five rooms, for which she paid a rental of $70 monthly.
The defendants, two physicians experienced in real estate investments, were co-owners of the building. In contemplation of city plans to widen Second Avenue at the approaches to the Queensboro Bridge to accommodate a bus turn-around and an underpass, a change which would result in their off-corner property fronting on Second Avenue, the defendants had their architect file plans for a new six-story apartment house to replace the existing brownstone, with stores on the ground floor facing the avenue. The plans were approved by the Department of Buildings in August, 1963. Defendants then applied to the Rent and Rehabilitation Administration for a certificate of eviction. After hearings were held, the attorneys for the *783 landlord and tenant entered into a stipulation pursuant to which Miss Queenan was to vacate the premises prior to September 1,1965 in return for a payment of $1,300. Prior to that date she moved out, and defendants proceeded to demolish the building. To this time, however, the anticipated widening of Second Avenue has not ripened into reality, and the planned building has never been constructed. The site is now occupied by a parking lot.
Section Y51-6.0 of the Administrative Code of the City of New York, effective May 1, 1962 (continuing section 71 of the Temporary State Housing Bent Commission Bent and Eviction Begulations) provides:
“ g. (1) Where after the city rent agency has granted a certificate of eviction authorizing the landlord to pursue his remedies pursuant to law to acquire possession and a tenant voluntarily removes from a housing accommodation or has been removed therefrom by action or proceeding to evict from or recover possession of a housing accommodation upon the ground that the landlord seeks in good faith to recover possession of such accommodation: * * *
“ (d) For the immediate purpose of demolishing such housing accommodations and constructing a new building in accordance with approved plans, or reasonable amendment thereof, and the landlord has failed to complete the demolition within six months after the removal of the last tenant, or having demolished the premises, has failed or neglected to proceed with the new construction within ninety days after the completion of such demolition, or having commenced such construction work, has failed or neglected to prosecute such work with reasonable diligence; * * *
“ Such landlord shall, unless for good cause shown, be liable to the tenant for three times the damages sustained on account of such removal plus reasonable attorney’s fees and costs as determined by the court.”
The undisputed facts here are that defendants obtained a certificate of eviction on the ground that new construction was planned, that demolition was completed within six months of the removal of the last tenant, but that defendants did not proceed with the proposed new construction within 90 days thereafter. The question is whether the landlords have demonstrated such good cause as to exonerate them from the imposition of the damages prescribed. That is a question for determination by the trial court based upon the totality of the circumstances. (Kauffman & Sons Saddlery Co. v. Miller, 298 N. Y. 38; Damato v. Wallbank Realty Corp., 33 Misc 2d 993.)
*784 Defendants here have urged that the failure of the city to act to widen the avenue has rendered the planned construction of their new building virtually impossible, but this overstates the case. The plans have been approved for the existing site, and while, under present conditions the ground floor stores would probably have to remain vacant, or the plans modified, the apartments which comprise the rest of the building could be fully utilized. There would be economic hardship in the sense that the contemplated revenues would not be completely realized for a time, but that hardly rises to the level of impossibility. To go ahead with construction might be economically unattractive, but it is not legally or physically impossible.
There appear to be no cases passing on whether economic hardship is a sufficiently good cause to justify a landlord’s failure to build, enabling a landlord to avoid the imposition of damages for eviction of a tenant. This court concludes that it is not. The widening of Second Avenue and its shift westward were officially mapped by the city in 1960, but as anyone with the slightest experience in real estate must know, there is a wide gap between plans on a map and reality. Defendants were the prospective fortuitous beneficiaries of a change which would enhance the value of their property, and they sought to capitalize on it at the earliest opportunity. When they moved precipitately in 1964 and 1965 to evict the existing tenants from their rent-controlled premises, there had been no change whatever in conditions to warrant a conclusion that the street-widening was imminent. Giant municipalities notoriously proceed at a glacial pace —there are too many problems that have to be studied, and too many conflicting interests to be reconciled. Yet drawn by the lure of the rainbow, defendants ousted the tenants from their homes, where otherwise they might be . living to this day, for despite pleas, cajolery, importuning and pressures, the situation of the street has remained unchanged. This is not even a case where the hardship to the landlords was caused by a change in circumstances. Bather, it is the lack of a change upon which they counted. The golden bubble of their hope has been pricked and burst, but plaintiff, among others, was the victim of their illusions.
Her position has substantially changed, to her detriment. No longer does she have a five-room rent-controlled apartment for $70 a month in the East Sixties — now she has a two-room walk-up for $138 a month. Expenses of over $300 were incurred in moving. The position of the defendants, however, despite their professed inability to rebuild, has been improved by the demolition. With their property occupied by a rent-controlled *785 brownstone, they testified they barely broke even. With the structure torn down and the tenants evicted, they no longer have responsibilities for building maintenance, and now receive $14,000 a year from the use of the land as a parking lot and for a large advertising display sign. Whatever may be said about the good faith of the defendants in evicting the tenants with a hope of erecting a new building, the question presented for the court is one not of good faith in evicting, but of good cause for not rebuilding. The court rules that the nonmaterialization of an expected change, making a new building less profitable than contemplated, does not constitute good cause, and that plaintiff, having been moved out to make way for that building, is entitled to recover damages as prescribed by statute.
The measure of actual damage sustained by plaintiff must be the difference between what she would be paying for the rent-controlled apartment from which ghe was evicted and the rental value of a comparable apartment on the open market. What she is actually paying for a smaller apartment is of no moment. The court has no difficulty in accepting the testimony of plaintiff’s expert that a comparable five-room apartment in that neighborhood, if decontrolled, would bring at least $350 a month. Plaintiff requests three times the difference from the time of her removal to the date of trial (a period of 51 months), for a total of $44,195.40.
Unlike the situation where treble damages awarded for rent overcharges are limited to a period of two years (Administrative Code, § Y51-11.0, subd. e), there is no express statutory limitation as to the time when damages accrue where a tenant has been evicted for the ostensible purpose of new construction. Defendants nevertheless urge an analogous limitation here, citing as authority Gorman v. Gould (37 Misc 2d 553). This court is not persuaded by the analogy to the short Statute of Limitations provided in that section, especially in view of the apparently deliberate omission of such a limitation in section Y51-6.0 of the Administrative Code. This court is fully aware, however, of the enormous sums to which treble damages could balloon if there were no limitation of any sort. (If all the evicted tenants could sue here, their claims would probably exceed the value of the property.) There are two practical limitations. One is a refusal by a court to speculate on future damages (since the new building may yet be constructed, or the rent control laws with scheduled expiration dates may not be renéwed); the other is the discretion with which a court may pass on the claim to treble damages.
*786 Despite the use of the mandatory word ‘ ‘ shall ’ ’, the court construes the statutory direction for treble damages as still leaving it with some area of discretion. While the court has concluded that good cause was not shown for the defendants’ failure to build, it finds there was no attempt to oust plaintiff in bad faith or without apparent justification, but rather an unduly precipitate overreaching based upon an unwarranted and illusory optimism which does not call for the imposition of treble damages. The court will therefore award to the plaintiff as damages the difference between the rent she paid and the rental for comparable quarters on the open market from the date of removal to the time of trial — the sum of $14,280. The court declines to award anything for moving expenses and attorney’s fees in the eviction proceeding, as plaintiff was compensated upon her agreement to move with a sum which more than adequately compensated for these items. No proof was offered as to the reasonable value of attorney’s fees in connection with this lawsuit. Judgment for plaintiff in the sum of $14,280.