(July 8, 1993)

■ PATRICIA MAYNARD, Appellant, v BERNICE GREENBERG, Respondent. [600 NYS2d 50] —Judgment, Supreme Court, New York County (Jacqueline W. Silbermann, J.), entered January 10, 1992, dismissing the complaint on the merits after bench trial, unanimously reversed, on the law and the facts, judgment is awarded to plaintiff, and the case is remanded for determination of damages in accordance herewith, without costs. Appeal from order, same court (Eugene Nardelli, J.), entered May 2, 1991, insofar as it denied plaintiff's request for partial summary judgment, unanimously dismissed without costs, as academic.

Plaintiff had resided in her third-floor, rent-controlled apartment at 631 Park Avenue in Manhattan for over 30 years. In 1976, defendant and her late husband, who lived in a rent-stabilized apartment on East 79th Street, acquired the four-story Park Avenue brownstone together with another couple, and immediately sought a certificate for plaintiff's eviction so that defendant and her husband might occupy that apartment. The certificate was granted on those grounds in 1981 in an order recognizing the "good faith" effort "to recover possession * * * for personal use and occupancy by the landlord * * * and his family, and for no other purpose." After five years of litigation, plaintiff finally vacated her $286-per-month apartment in November 1981 and moved to a rent-stabilized apartment elsewhere at $1,053 per month.

Notwithstanding any original intention by defendant and her husband to move into this apartment, such never became a reality. Defendant's husband took ill, and eventually succumbed to a heart attack in September 1982. By that time, plaintiff had already commenced this action for damages under the New York City Rent and Eviction Regulations.

Those regulations provide (9 NYCRR 2206.7) that where a landlord seeks in good faith to recover possession of a housing accommodation under a certificate of eviction from the Commissioner of Housing and Community Renewal, for the immediate and personal use of himself or his family, and he or his family then fails to occupy such accommodation within 30 days after the evicted tenant vacates the premises, "such landlord shall, unless for good cause shown, be liable to the tenant for three times the damages sustained on account of such removal, plus reasonable attorney's fees and costs". The damages are to be measured at "the difference between the rent paid for the housing accommodation from which the tenant was evicted and the rental value of a comparable housing accommodation on the open market", plus the cost of removal of the tenant's property from the premises *(ibid.)*.

Liability being established by statute, the burden should fall on defendant, once a prima facie case is shown, to prove non-applicability. Defendant's husband had to establish "good faith" for issuance of a certificate of eviction in the first place (9 NYCRR 2204.5 [a]). The trial court equated that administrative standard of "good faith" to the landlord's initial application seeking to recover possession and then imputed that finding to an establishment of "good cause" for failing to occupy the vacated apartment *(see,* 9 NYCRR 2206.7). That imputation was incorrect, as a matter of law *(see, Damato v Wallbank Realty Corp.,* 33 Misc 2d 993), and we further conclude, contrary to the trial court's findings, that defendant did not satisfy her burden of showing good cause for failure to occupy the apartment within 30 days after the tenant's departure. The trial court found a prior intention to occupy the apartment, plus defendant's exercise of dominion and control thereover, to be sufficient. We find the evidence lacking, even to support that test.

In fact, defendant and her husband never surrendered their apartment on East 79th Street, and defendant continued to live there throughout these proceedings. The family did gather at the refurbished Park Avenue apartment for a nostalgic Thanksgiving weekend in 1982, but even defendant admitted that her overnight stays there were sporadic and limited. She would occasionally entertain friends there in the daytime, trying to "get a feeling about living there", but expressed fear about staying overnight because of a disturbing individual who inhabited the building. Curiously, this individual continued to be offered renewal leases on his deregulated apartment.

Something more than a good-faith intention on the part of the landlord is required in order to avoid civil liability under section 2206.7. In *Kauffman & Sons Saddlery Co. v Miller* (298 NY 38), construing a predecessor statute dealing with commercial tenancies (L 1945, ch 3, § 8, as amended by L 1946, ch 272, § 2), Judge Fuld ruled that subsequent events may cast doubt upon a landlord's good-faith intention to evict a tenant in order to facilitate the landlord's personal use of the premises, creating at least a question of fact on the issue of good faith. But today we need not rely only upon the analysis of Judge Fuld. The 1945 enactment was merely a declaration of public policy against such tactics by a landlord. It was not until the amendment a year later that the dispossessed tenant was given a real remedy, namely, a statutory right of action in damages in the event the landlord failed within 30 days to occupy and utilize the premises.

The statute now before us differs in two crucial respects from the post-war amended statute construed by Judge Fuld. First, the present statute starts off with the premise that once the landlord obtains the administrative relief of a certificate of eviction, a presumption of good faith in seeking to recover possession for his own or his family's use has been established. Second, liability now attaches only if the landlord, in failing to proceed, is unable to demonstrate good cause for that failure. Thus, the focus of the inquiry is no longer on the landlord's good faith in initially seeking to recover possession, but is rather shifted to consideration of whether the landlord can meet his burden of establishing good cause for a *volte-face*. We believe defendant has not met that burden on this record.

We further read the "good cause" standard in the statute as having a double application. In addition to its crucial meaning in determining the equivocating landlord's basic liability, the same standard is also operative in determining the measure of damages. The phrase referring to "good cause" immediately precedes the reference to treble damages. While we find that defendant has not established the requisite good cause to avoid primary liability under the statute, we nevertheless credit her bona fides for failure to go forward, at least for the purpose of avoiding treble damages. A single measure of damages is thus appropriate. Those damages must be measured against "the rental value of a comparable housing accommodation on the open market", and not necessarily the subsequent market value of this particular apartment after renovation. Concur—Murphy, P. J., Milonas, Wallach and

Kassal, JJ. [As amended by unpublished order entered Oct. 28, 1993.]