JEROME FLEISCHMAN, as Executor of JEAN B. HUTSON, Deceased, Appellant, v TRANSAMERICA CORPORATION et al., Respondents. [55 NYS3d 447]—

In an action, inter alia, to recover damages for breach of contract, the plaintiff appeals, as limited by his brief, from so much of an order of the Supreme Court, Nassau County (Bruno, J.), entered February 23, 2015, as granted the defendants' motion for summary judgment dismissing the complaint and denied his cross motion for summary judgment on the complaint.

Ordered that the order is modified, on the law, by deleting the provision thereof granting the defendants' motion for summary judgment dismissing the complaint, and substituting therefor a provision denying the defendants' motion; as so modified, the order is affirmed insofar as appealed from, without costs or disbursements.

The plaintiff's decedent, Jean B. Hutson, purchased a single premium deferred annuity from Presidential Life Insurance Company (hereinafter Presidential) on February 18, 1997 (hereinafter Annuity #8231). Hutson later purchased a second single premium deferred annuity from Presidential on January 21, 1998 (hereinafter Annuity #8420). Both annuities were assigned to Transamerica Life Insurance Company of New York (hereinafter TLICNY) in January 1998. TLICNY's business was subsequently taken over by the defendant Transamerica Financial Life Insurance Company (hereinafter TFLIC).

Hutson died on February 4, 1998. Shortly thereafter, the plaintiff agreed to act as executor of Hutson's estate. On October 29, 1998, the estate's attorneys wrote to TLICNY regarding Annuity #8420, requesting information on how to close the account and cash in the value of the annuity as of the date of death. TLICNY responded on November 5, 1998, and, upon subsequently receiving due proof of Hutson's death, TLICNY issued a check to the estate on October 29, 1999, in the amount $54,920.87, representing the proceeds of Annuity #8420 valued as of the date of death, plus interest at the rate of 3% from the date of death until the date of payment.

It appears from the record that the estate was unaware of the existence of Annuity #8231, and TLICNY initially failed to

make any link between the two contracts, despite its knowledge that Hutson had died. Documents produced by the defendants show that, on December 11, 2001, an employee of Presidential wrote to TLICNY asking for Hutson's last known address. The letter explained that Hutson had passed away and that Presidential was unable to locate the family. The subject line of the letter clearly referenced both Annuity #8420 and Annuity #8231. On January 14, 2002, a claims examiner from the Transamerica Insurance & Investment Group in Kansas City, Missouri, wrote back to Presidential stating that "the executor of Ms. Hutson's estate was Jerome B. Fleishman," and also providing the address and contact information of the estate's lawyers. The subject line of the response clearly referred to Annuity #8420 and Annuity #8231.

Further documents produced by the defendants show that yearly statements for Annuity #8231 were mailed to Hutson's address from 1998 through 2002, and from 2005 through 2010. Up to and including 2002, the yearly statements were mailed by TLICNY in Purchase. Beginning in 2005, the yearly statements were mailed by TFLIC, listing a home office address in Purchase, but an administrative office in Cedar Rapids, Iowa.

One such statement, dated February 15, 2002, was in fact returned to TLICNY with the notation—"Moved—Left no Address" and an additional handwritten note stating, "deceased." After another annual statement was returned to TFLIC in 2010, TFLIC, in a letter dated April 1, 2010, attempted to contact Hutson's executor. However, the letter was sent to the address used by the estate's lawyers in 1998, which was no longer current. According to the plaintiff, TFLIC did not succeed in contacting a representative of Hutson's estate regarding Annuity #8231 until September 2012, more than 14 years after Hutson's death.

On or about November 8, 2012, TFLIC sent the plaintiff a check for $142,163.54, representing the value of Annuity #8231 on the date of Hutson's death ($132,071.06), plus $10,092.48 in interest, calculated at an annual rate of 0.5%. The estate accepted the payment "without waiving any rights that [the plaintiff] may have to interest since the date of death, costs and expenses resulting from your failure to provide this annuity upon the decedent's death." The estate later commenced this action against the defendants alleging, inter alia, breach of contract for the delay in paying the proceeds of Annuity #8231, and demanding, inter alia, prejudgment interest at the legal rate of 9% (see CPLR 5004).

The defendants moved for summary judgment dismissing

the complaint, and the plaintiff cross-moved for summary judgment on the complaint. The Supreme Court granted the defendants' motion and denied the plaintiff's cross motion. We modify by denying the defendants' motion.

Contrary to the plaintiff's contention, the calculation of interest on the proceeds due under Annuity #8231 must be determined in accordance with the principles set forth in Insurance Law § 3214, which applies specifically to interest paid on the proceeds of an annuity following the death of the annuitant. The plaintiff's contention that Insurance Law § 3214 does not apply under circumstances where the insurer breaches the terms of the annuity contract by unreasonably delaying payment (cf. Chipetine v William Penn Life Ins. Co., 227 AD2d 216 [1996]) is belied by the plain language of the statute, which on its face admits of no such interpretation.

The Supreme Court erred, however, in determining that the rate of interest due on the proceeds of Annuity #8231 pursuant to Insurance Law § 3214 (c) should be determined solely by reference to the rate in effect at the time of payment—in this case, 0.5%.

Insurance Law § 3214 (c), entitled "Interest upon proceeds of life insurance policies and annuity contracts," provides, in relevant part, that, "interest upon the principal sum paid to the beneficiary . . . shall be computed daily at the rate of interest currently paid by the insurer on proceeds left under the interest settlement option, from the date of the death of an . . . annuitant in connection with a death claim on such a . . . contract of annuity . . . to the date of payment and shall be added to and be a part of the total sum paid." Contrary to the defendants' contention, the Legislature's use of the word "currently" is ambiguous, as it could refer to the rate in effect on each date on which a daily computation must be made. Conversely, it could refer to the rate in effect on the date of payment.

" 'Where the language of a statute is susceptible of two constructions, the courts will adopt that which avoids injustice, hardship, constitutional doubts or other objectionable results' " (Matter of Jacob, 86 NY2d 651, 667 [1995], quoting H. Kauffman & Sons Saddlery Co. v Miller, 298 NY 38, 44 [1948]). Applying this principle here, the calculation of interest under section 3214 (c) should reflect the rates applied by the insurer in the normal course of managing its funds held on deposit, rather than arbitrarily determining the entire interest payment based on the happenstance of the interest rate in effect on the date of payment (see Ops Gen Counsel NY Ins Dept No. 3-17-92 [2] [Mar. 17, 1992]).

The defendants' remaining contentions are without merit.

Accordingly, summary judgment should have been denied to both parties in this case, as the record presents unresolved issues of fact regarding the historical interest rates used by TFLIC and its predecessor, TLICNY, between 1998 (the year of Hutson's death) and 2012 (the year on which the proceeds of Annuity #8231 were paid). Rivera, J.P., Chambers, Duffy and Barros, JJ., concur.